## John A. Colby et al. v. Samuel Herron, by his Next Friend.

1.  EVIDENCE—*Bulky Articles—How Preserved in the Record.*—Where witnesses are examined with reference to a machine known as a " hair picker," which, although present in the court room before the jury, was not offered in evidence, but was very fully described, so that its operation might be clearly seen and understood, it must be regarded as before this court for the purpose of review as to points involving the sufficiency of the evidence to sustain the verdict and judgment.

2.  SAME—*Description of Bulky Articles Used in Evidence.*—Where a physical object, admitted in evidence, is too bulky and cumbersome to be incorporated into or transmitted with the bill of exceptions, it would seem that nothing less than a complete description of such object will suffice; and until the court is better advised, it will hold that such a description is sufficient.

3.  SAME—*Sufficient Description of the Machine Referred to by Witnesses.*—In the opinion, the court states the description of the machine in question, referred to as the " hair picker," and holds it sufficient.

**Action in Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899.   Reversed and remanded.   Opinion filed April 4, 1900.

PARTRIDGE & PARTRIDGE, attorneys for appellants; JOHN P. WILSON, of counsel.

SETH F. CREWS and RALPH CREWS, attorneys for appellee.

MR. PRESIDING JUSTICE HORTON delivered the opinion of the court.

This is an action on the case brought by appellee to recover from appellants damages for injuries sustained by appellee while he, as an employe of appellants, was operating what is known as a "hair picker."

On behalf of appellee it is contended that such hair picker was before the jury, and that as it is not before this court the case can not be here reviewed, at least as to any point involving the sufficiency of the evidence to sustain the verdict and judgment. The recent case of Seaverns v. Lischinski, 82 Ill. App. 298, decided by this court, is cited and quoted from at length to sustain that contention. In the case cited, the piece of rope referred to was offered and admitted in evidence but was not brought to this court, neither was there any such description of it as would supply the omission. In the case at bar the hair picker was not offered in evidence, although it was in the court room before the jury, and witnesses were examined with reference to it. In the case cited this court, speaking through Mr. Justice Shepard, said (p. 302):

"If there be a rule as to what will take the place, in a bill of exceptions, of a physical object admitted in evidence at the trial, but too bulky and cumbersome to be incorporated into or transmitted with the bill of exceptions, we have never seen it stated. It would seem that nothing less than a complete description of the object would suffice, and until we learn better we will hold that such a description is enough. See Doud v. Guthrie, 13 Ill. App. 653, on page 661."

In the case at bar the hair picker is very fully described, so that its construction and operation may be clearly seen and understood, although, as stated, it was not offered in evidence. The contention by counsel for appellee can not be sustained.

It is unnecessary to review authorities upon the question argued by counsel for appellant, that if appellee was

guilty of negligence which contributed to produce the injury he received, he can not recover damages for such injury. That is the settled law in this State. To sustain a recovery the evidence must also show that the party against whom such recovery is sought, was guilty of negligence.

The description of the hair picker, which is taken from the printed argument of counsel for appellant, is as follows, viz.:

" Beginning with the part of the machine into which the hair to be " picked " is fed, there is a chute about eleven or twelve inches wide, made of a board with sides and about fifteen or sixteen inches long. At the end of the chute toward the hair picker are two wooden rollers which engage the hair and between which it passes to the picker. These rollers are each about two inches in diameter and a foot in length, and are so placed that they extend across the chute horizontally, and the lower one is depressed until its top is one-half inch or a little more above the bottom of the chute. These rollers are turned by a crank a foot long or so, and at the other end of the crank shaft a cog-wheel was fixed, which turned with the shaft and geared into a smaller cog-wheel on another shaft. The distance between these two shafts was about a foot, and on the second shaft there was a drum. This drum contained the short, pointed spikes or " needles and pins," as the plaintiff termed them, which were the pickers, and which picked the hair.

" The distance between the wooden rollers and the projections of pickers on the drum is not expressly stated, but it is sufficiently indicated by the testimony of the plaintiff, who stated his hand went through the rollers about three inches above the wrist joint at the time his fingers were injured.

" The top of the drum containing the pickers down to the top of the wooden rollers was covered with a sheet iron or " tin " plate so that no part of the front of the pickers was exposed. The only way to reach the pickers when the machine was in operation was by passing through between the wooden rollers sufficiently far to engage the short pointed spikes or pickers.

" The wooden rollers were plainly visible at all times, and about six inches or a little more from the rollers there was a black mark on the chute to indicate how far the hair was to be pushed by hand. After that the hair is carried be-

tween the rollers which draw it in and pass it through so that it engages the pickers on the drum. This hair comes in sheets an inch or so in thickness, and two or three feet long.

"The crank fastened on the shaft, above described, is turned by hand. The machine was operated sometimes by one boy, who both turned the crank and fed the hair into the machine, and sometimes by two boys, one of whom turned the crank, the other feeding in the hair.

"The machine used was of the ordinary kind, which have been in common and general use in upholstery establishments for the last fifteen or twenty years or more. 'They are all alike.' This machine has been in use under Schultz for nine years, during which time five or six different boys had been employed upon it.

"It appeared that the machine ought not to be run rapidly to operate perfectly, and when the court somewhat suggestively asked the witness, 'The faster you run it, the more work it will do, don't it?' the witness replied that it would not, for this would throw it out of line."

The witness Schultz, appellant's foreman, states that he told appellee not to go any farther with his hand than the black mark on the chute. This is not denied by appellee. One of the appellants, before he agreed to give appellee employment, asked his age and appellee replied that he was fifteen years old. Appellee testified that he had never worked upon any machine like or similar to the one in question. The testimony seems to us to be overwhelming and conclusive of the fact that appellee stated in substance to said foreman when the foreman was showing him how to run the machine, that he had run a like machine before that time. As the foreman states it, appellee said : "Oh, 1 know all about the machine. I run it on the West Side." Had the appellee stated truthfully that he was but thirteen years old, and that he had never had any experience in running such a machine, instead of saying that he was fifteen years old and that he knew, from experience, how to run the machine, a different question might arise as to negligence on the part of appellants.

The machine in question had been in use many years, and was of the kind in general use. It does not appear that it

was defective or out of order. The drum upon which were the pickers, the "needles and pins," as appellee called them, was encased or enclosed so that they were reached by the hair only after it passed between the rollers. Several other boys had worked upon this machine and it does not appear that any one was ever injured in using it. There were no knives anywhere in the machine as charged in the first and third counts of the declaration as amended. (The declaration contained but three counts, and the second was abandoned by appellee and the trial was upon the first and third counts.)

It does not appear from the evidence that appellants or either of them, or any one for whose acts or omissions they can be held responsible, was guilty of the negligence charged in the declaration. This is especially so when it is considered that appellee stated that he was fifteen years of age and experienced in operating such a machine. And it does appear, as it seems to us, that appellee was guilty of negligence which contributed to produce the injury he received. He would not have been injured had he not carelessly allowed his hand to pass between the rollers.

Appellee testified that it was four months after he was injured before he could do anything. Upon cross-examination he stated that he told Joe Richter, the boy who was working with him when he was hurt, that he had not done any work after he was hurt because if he worked he would not get so much when this case "came up"—that he "laid off so that he could get more"—and that no one told him that, but, as he stated it, "I just figured it out myself." There is no evidence upon which to base the verdict in this case except the testimony of this witness, the plaintiff (appellee).

We do not deem it necessary to express any opinion as to the refusal of the court to give certain instructions as to which complaint is made by counsel for appellant.

For the reasons indicated the judgment of the Circuit Court will be reversed and the cause remanded.