## PAHLKA v. CHICAGO, R. I. & P. R. CO.

No. 7502—Opinion Filed Nov. 28, 1916.

Rehearing Denied Jan. 23, 1917.

(161 Pac. 544.)

**1  Appeal and Error—Record—Defects— Dismissal.**

The fact that a case-made does not show that it contains all of the evidence is not necessarily ground for the dismissal of an appeal, where a consideration of all of the evidence is not necessary to a determination of the questions raised upon the appeal.

**2.  Same—Case-Made—Recitals.**

Where the case-made has a recital that it contains all of the evidence, the position of such recital in the case-made is immaterial.

**3.  Same—Case-Made—Contents.**

Where an exhibit to the evidence is too bulky or cumbersome to be incorporated in a case-made, or is otherwise incapable or impracticable of being incorporated therein, and the case-made contains a description of the exhibit sufficient to enable this court to determine the evidentiary value of the exhibit, it will not be held that the case-made does not contain all of the evidence, on account of the omission of such exhibit from the case-made.

**4.  Same—Incorporation of Evidence.**

Where a case-made contains an orderly and sequential recital of the proceedings in a cause, together with a specific recital that it contains all of the evidence, followed by the proper certificate of the trial judge, attested by the clerk, and appellee, after notice of the settlement of the case-made, makes no suggestions of amendments thereto, the case-made will be taken as true and containing a full record of the case sufficient to present the questions raised on appeal, the record not containing its own material impeachment; and where, under such circumstances, the case-made upon its face shows that exhibits are omitted, this court will permit the correction of such case-made so as to supply such omission; and when such omitted exhibits are supplied by such a correction, under a proper certificate of the trial judge, attested by the clerk, and the opposing party has pointed out no other deficiency in the case and no other material deficiency appears, the case-made in view of the original recital that it contains all of the evidence considered in conjunction with the amendment, will be held to sufficiently show that it contains all of the evidence.

**5.  Appeal and Error—Review—Questions of Fact.**

Where a verdict cannot be justified upon any hypothesis presented by the evidence, it will not be allowed to stand; and, under this rule and section 5033, Revised Laws of 1910,

where in a suit for injury to property, a verdict is favorable to plaintiff upon the question of the general liability, but assesses the damages of plaintiff at the nominal sum of $1 and costs, when the evidence reasonably supports the general findings in favor of plaintiff, and all of the evidence upon the measure of his damages shows the same to be in an exceedingly larger sum than $1, and the assessment of the damages at $1 is not supported by any of the evidence, the verdict and judgment thereupon should be set aside.

**6. Waters and Water Courses—Injuries by Flowage—Actions—Damages.**

Record examined, and held that there was error in the assessment of damages.

**7. Appeal and Error—Review—Prejudicial Effect of Error—Instructions.**

Where a verdict of a jury is favorable to plaintiff upon the question of general liability of defendant to plaintiff, as distinguished from the measure of the liability, error in instructions upon the question of general liability, not affecting the measure thereof, may not be presented by such plaintiff on appeal, except in so far as such erroneous instructions may have tended to confuse the issues in the minds of the jury. Erroneous instructions examined, and held to have had such confusing result.

**8. Waters and Water Courses—Injuries from Flowage—Liability—Act of God.**

A railroad company, in the construction of a bridge across a stream and roadbed embankments across adjacent bottom lands, must regard the known flood conditions of the stream, even though such conditions include extraordinary flood; and an act of God, such as an unprecedented rainfall and resulting flood, which will excuse from liability, must not only be the proximate cause of the loss, but it must be the sole cause. If the injury is caused by an act of God, commingled with the negligence of the defendant, as an efficient and concurrent cause, and the injury would not have occurred except for such negligence, the railroad company will be liable.

**9. Same—Justification—Congressional Grant.**

In a suit for damages resulting from overflow of lands, caused by negligent construction and maintenance of a railroad bridge and embankment, a congressional grant of franchise and right of way, to construct and maintain such railroad, bridge, and embankment, does not, by implication, grant immunity from the result of negligence in the construction and maintenance thereof, and thereby flooding adjacent lands with the overflow waters of a stream; it not appearing that there is granted any flood right to such lands.

**10. Action — Injuries from Flowage—"Permanent"—Successive Causes of Action.**

In a suit for damages resulting from a negligent condition in the construction and maintenance of a railroad bridge and embankment, even though such structures be perma-

nent in their nature, such negligent condition will not be held "permanent" if it is abatable by an expenditure of either labor or money and the abatement of such casual negligent condition is consistent with the rightful use and maintenance of the structures; and a cause of action for damages, occasioned by negligence in a structure not permanent under this rule, arises at the time of the actual injury, and successive actions may be maintained for successive injuries in such a case.

**11. Vendor and Purchaser—Actions for Injury to Land—Accrual.**

In cases of injury from negligence in a permanent structure, where actual injury is not the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions, the cause of action rises at the time of actual injury, and not at the time of the erection of the structure; and, in cases of injury from permanent cause, where, assuming the continuance or recurrence of ordinary conditions, the injury is the obvious or necessary result, the cause of action arises at the time of the creation of the cause, viz. the erection of the negligent structure.

(Syllabus by Johnson, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Charles W Pahlka against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

J. S. Jenkins and J. Will Laws, for plaintiff in error.

R. J. Roberts, C. O. Blake, W. H. Moore, K. W. Shartel, and Blake & Boys, for defendant in error.

Opinion by JOHNSON, C. Upon August 31, 1914, in the district court of Oklahoma county, Charles W. Pahlka, plaintiff in error, sued defendant in error, the Chicago, Rock Island & Pacific Railway Company, a corporation, for $4,685, damages to property caused by flood waters of the South Canadian river, and alleged to have resulted from the negligent construction and maintenance of a certain bridge and embankments of defendant.

The physical situation involved is as follows, to wit: The farm of plaintiff lay between the prongs of a horseshoe bend in the South Canadian river, the bend or hump of the shoe extending northward, and the prongs of the shoe in southernly directions, the east prong taking a slightly southeasterly course. In other words, the river, running east, at a point just west of the farm, turns northward, then, at a point northwest of the farm swings into an east by northeast curve to a point a little northeast of the farm, where the river turns into a southeastward course

to a point almost east of the point of the first northward bend above mentioned, from which last point it then continues east. High lands on the south face the opening of the horseshoe bend of the river. Plaintiff's farm lies between the first point of deviation from the eastward course and the last-mentioned point of return to the directly eastward course, or between the ends of the east and west prongs of the horseshoe bend described. The railroad of defendant extends almost directly north and south, opposite the eastern line of plaintiff's land, crossing the eastern prong of the horseshoe bend in the river at a point just northeast of the land in question. At this crossing point is the railroad bridge in question; and, on the upper or west side of the right of way, extending away from each end of the bridge, there is a long embankment or dike, erected for the purpose of protecting the railroad right of way from the waters of the river in times of flood. The result of this situation is that, in times of extraordinary flood, such as the one involved, the openings at the bridge of defendant are not sufficient to carry away the flood waters of the river; that these flood waters accumulate above the embankments, above described, and overflow the lands in the horseshoe bend, including the farm of plaintiff.

In May, 1914, there was an extraordinary flood in the South Canadian river. At a point west of the farm of plaintiff, and at a point about at the beginning of the west prong of the horseshoe bend of the river, a stream of overflow water broke over the river bank and ran down towards the south end of the embankment of defendant, crossing one corner of plaintiff's farm (covering in its course about four or five acres of plaintiff's land). This overflow water, striking defendant's embankment, was backed up and formed into a lake some five or six feet deep, extending back over all of the lands of plaintiff, washing plaintiff's dwelling house and barn from their foundations, seriously damaging both houses, the furniture in the dwelling and corn in the crib, killing 182 chickens belonging to plaintiff, destroying the following crops of plaintiff, to wit: Six acres of alfalfa, 55 acres of growing wheat, and 75 acres of corn, and leaving a thick deposit of sand over about two-thirds of the land upon which these crops stood, and the other land of plaintiff. Plaintiff owned 130 acres of the land, and was renting 75 acres more of it. Plaintiff sued for the damages to his house, furniture, barn, corn in crib, chickens, crops, and land owned by him.

In addition to setting forth the flooding of his land and the damages, as above mentioned, plaintiff alleged that the said bridge and embankments of defendant were negligently constructed, in that no opening was provided therein of sufficient size to carry off the flood waters of the river, and that the said embankments and bridge were so constructed as to form a dam and obstruct the flood waters of the river; that such negligence caused said flood waters to overflow his lands and resulted in the damages sued for by him; and that such negligence, as such cause of his damages, was susceptible of remedy or abatement by lengthening the bridge, removing said dike, and making openings in the embankment so as to permit the passage of the waters.

Defendant pleaded a general denial; that the said bridge and embankments were constructed in a workmanlike and careful manner and without negligence; that originally the railroad and appurtenances, along the route in question, was constructed by the Chicago, Kansas & Nebraska Railway Company, under a grant to it of franchise and right of way by an act of the Congress of the United States; that after the construction thereof, defendant purchased such railroad and appurtenances from the said grantee in such franchise; that, after such purchase and construction, defendant constructed a new bridge and grade or dump of more substantial and durable substances and materials than used by its grantor in the old bridge; that the said bridge and embankments were carefully and skillfully constructed by defendant and its said grantor, and that in such construction defendant and its grantor did no more than was necessary for the purposes for which such construction was designed and as contemplated by said act of Congress; and that after such construction said grantor and defendant maintained and used said railroad and embankment without negligence and for the purposes contemplated and expressed in such act of Congress, and in accord therewith.

It appears from the pleadings and evidence that in about the year 1904, a flood and overflow, similar to the one in 1914, occurred, which washed out the bridge and embankments originally constructed by the Chicago, Kansas & Nebraska Railway Company, as a result of which the bridge and embankments in controversy were constructed by the defendant, the giving way of the embankments in the flood of 1904 permitting the waters to pass on, and thus not causing the same injuries to nearby lands, appearing to have resulted from the 1914 flood.

Plaintiff acquired his lands in the year 1913 and more than two years after the construction of the bridge and embankments, as they existed at the time of the 1914 flood.

The case was tried to a jury, which returned a general verdict in favor of plaintiff, assessing his damages at $1 and costs. Judgment was render accordingly, plaintiff's motion for a new trial overruled, and plaintiff appeals.

Among other assignments of error, it is contended by plaintiff in error: (1) That the verdict and answers of the jury to the special interrogatories were contrary to the law and the evidence, and not supported by any of the evidence, and that the jury erred in the assessment of the damages; (2) that the lower court erred in giving certain instructions and in refusing certain requested instructions; and (3) that the court erred in instructing upon the theory of the defendant and not instructing upon the theory of plaintiff.

Defendant in error, in its brief on the merits, submits a motion to dismiss the appeal upon the ground that the case-made does not contain a recitation that it contains all of the evidence, and points out evidence not contained by the case-made, namely, Exhibits 1 and 2, and objects to a consideration of the questions raised on account of such alleged defects in the record.

The fact that the case-made does not contain all of the evidence is not necessarily ground for the dismissal of the appeal. Section 5241 of Revised Laws 1910 specifically authorizes the making of a case, which may contain only so much of the evidence as is necessary to present questions proposed on appeal, or none of the evidence if it is unnecessary to a consideration of propositions advanced; and section 5243 specifically provides that the appeal shall not be dismissed, even when the evidence is stated in a manner insufficient for the purposes for which the case is made until an opportunity is given to correct the deficiency. See St. Louis & San Francisco Railroad Co. v. Taliaferro, 61 Oklahoma, 160 Pac. 610.

However, in this case, in order to determine the propositions presented, a consideration of the evidence is essential; and it, therefore, becomes necessary to determine the sufficiency of the case-made, as showing the evidence.

While the case-made does not contain a recitation of its contents upon one formal recital sheet, immediately preceding the official certificate, as is the customary practice, yet it does contain a formal, orderly, sequential recital of the case in the lower court, including the evidence, and, as conforming to the statutory rules of pleading (section 4737, Revised Laws 1910), in fact shows, in ordinary and concise language, as effectually as if specifically set forth in the customary, stereotyped, formal recital at the end of case made, that the necessary proceedings are therein contained. In addition to this, at the close of the evidence, on page 363 of the case-made, is a formal recitation that the case-made contains all of the evidence. This court has held that the position of the recital in the record is immaterial, so long as the case substantially shows that it contains the necessary proceedings, and that the orderly and sequential recital of the proceedings, as hereinabove mentioned, as existing in this case, followed by the rule certificate of the trial judge (the certificate in this case is in the language of the rule of this court, rule 17) attested by the clerk, imports verity, and is a substantial showing that the case contains all of the evidence and other proceedings. De Bolt v. Farmers' Exchange Bank, 46 Okla. 258, 148 Pac. 830; Higgins v. Street, 19 Okla. 42, 92 Pac. 155; American Steel & Wire Co. v. Coover, 27 Okla. 131, 111 Pac. 217, 30 L. R. A. (N. S.) 787. And see St. L. & S. F. R. Co. v. Taliaferro, supra.

Under the above rule, the original case-made was sufficient, but for the fact that defendant in error, in its brief, filed before the amendment hereinafter mentioned, pointed out that, as a matter of fact, the case-made did not contain all of the evidence, in that Exhibits 1 and 2, being the muniments of title of plaintiff, were omitted from it. Decisions from this court are cited, holding that where the showing of the case-made that it contains all of the evidence is contradicted by the record itself, the record will control. Upon this showing of the omission of Exhibits 1 and 2, leave was granted to correct the case-made; and an amendment to the case made has been filed, supplying the omitted exhibits.

In connection with the objection of defendant in error that Exhibits 1 and 2 were omitted from the case-made, defendant in error asserts that the certificate of the stenographer is not sufficient. This objection goes to the fact that the stenographer's certificate to the evidence, in referring to the exhibits and documentary evidence, states that his record contains all exhibits and documentary evidence "possible to be transcribed." It should be borne in mind that the objection

of defendant in error only points out the omission of Exhibits 1 and 2, which have been supplied by the amendment. In our examination of the record we find that it does not contain some samples of dirt, taken from the overflowed lands, and introduced in evidence as exhibits to defendant's evidence. We do not know how these exhibits could have been copied into the record, or the substance of them shown in the briefs of the parties, if the strict letter of the rule would have to be followed in such a case. The certificate of the stenographer was apt, and the exhibits were not "possible to be transcribed," and under these circumstances, we shall hold that it is not necessary for plaintiff in error to do the impossible to save his rights on appeal.

The rule seems to be that where a physical object is introduced in evidence which is too bulky or cumbersome to be incorporated in the case-made, or otherwise impracticable of incorporation therein, a description of such object is sufficient. 3 Cyc. 27 (note 19); Colby v. Herron, 88 Ill. App. 299; Seaverns v. Lischinski, 82 Ill. App. 298; Pierce v. Edington, 38 Ark. 150.

The soil exhibits in this case were used by witnesses, and are sufficiently described for the purpose of presenting their evidentiary effect.

An engineering blueprint was offered to and used by witnesses in giving their testimony, and identified as Exhibit 10, and this does not appear in the case-made. We do not find where it was introduced in evidence. Maps, drawings, etc., used to illustrate the evidence of witnesses, and not put in evidence, need not be copied into the case-made. Albion Consol. Min. Co. v. Richmond Min. Co., 19 Nev. 225, 8 Pac. 480, 3 Cyc. 58, notes. This exhibit would be about as difficult of translation into the case made by a stenographer not a skilled engineer, as the soil exhibits. It was fully delineated, described, and explained by the testimony of witnesses; and its physical presence is not necessary under the rule above announced.

In the lower court defendant in error suggested no amendments to the case-made, at the settlement of either the original or amended case-made. Our statute (section 5244, Revised Laws 1910), after providing for notice of settlement of case, suggestion of amendments, etc., contains this provision, viz.:

"* * * And if no amendments are suggested by the opposing party, as above provided, said case shall be taken as true and containing a full record of the cause, and certified accordingly." (Emphasis ours.)

This statute recognizes the right of a party to have the case-made show proceedings material to his side of the case, and provides a default on his failure to act. By his silence, the party says to the lower court:

"This record is a true and complete case-made, and contains everything necessary to present my side of the appeal."

Such action is a waiver of the incorporation of exhibits, where the exhibit is described in the record, and the substance of the testimonial value of the exhibit is in the record. See Sharon v. Sharon, 79 Cal. 633, 22 Pac. 26, 131.

This record, as heretofore pointed out, contains an orderly, sequential statement of all the proceedings in the case, including the evidence, together with the recital that it contains all of the evidence. Its only impeachment was as to the omission of Exhibits 1 and 2, which have been inserted by amendment. The only points of omission now lie in the exhibits, which were impracticable of original incorporation or of present correction, but which are sufficiently described; and defendant in error, the case-made being substantially correct, has defaulted in its right to object to technical imperfection. The motion to dismiss will be overruled; and the record will be held to be sufficient to present all questions raised on the appeal, including the sufficiency of the evidence.

Defendant in error contends: (1) That the bridge and embankment were permanent structures, that injury to the land of plaintiff resulted as a permanent injury at the time of the erection of the structures and prior to the acquisition of the land by plaintiff, and that plaintiff, having acquired the land subsequent to the permanent injury, had no cause of action for injuries arising subsequent to his acquisition of the land; (2) that the right to maintain the bridge and embankment was a federal guaranty; (3) that the bridge and embankment were constructed and maintained without negligence, but with due skill and care, pursuant to the federal guaranty above mentioned; and that these matters considered, the verdict and judgment should be sustained.

The general verdict was for plaintiff. This was a finding of negligence in the construction and maintenance of the bridge and embankments. Defendant did not appeal, and thus may not present the absence of the liability established by the verdict and judgment, except possibly as bearing upon harm

less error in the assessment of plaintiff's damages. All of the instructions, the giving and refusal of which are assigned as error by plaintiff in error, as well as those bearing upon the theory of defendant to the exclusion or omission of the theory of plaintiff, went to the question of the liability of defendant to plaintiff, and did not affect the measure or amount of the liability, or rather damages. The general liability, as distinguished from its measure, having been established by the verdict and judgment in favor of plaintiff, errors in instructing upon the general liability, adversely to plaintiff, are not material to this appeal, except in so far as they may have tended to confuse the issues, generally, in the minds of the jury, in arriving at the measure of liability, if such be the probable consequence. The real issues here, therefore, are: (1) The sufficiency of the case-made; (2) error in the assessment of the amount of recovery; and (3) harmfulness in the error, if any, in the assessment of the amount of recovery, which amounts to an inquiry as to whether the verdict, finding the existence of general liability, was supported by any evidence and is in harmony with the law. The latter proposition will involve a consideration of the instructions.

As above stated, the verdict was for the plaintiff, assessing his damages in the sum of $1. We have carefully read and considered the entire record. The finding in favor of plaintiff is amply supported by the evidence, but the assessment of the damages in the nominal sum of $1 has no evidential foundation whatsoever. Liability being established (and the verdict found it to exist), there is not one word of evidence in the record which could possibly warrant the assessment made. Plaintiff and defendant both proved the destruction of plaintiff's crops of, approximately, six acres of alfalfa, 55 acres of growing wheat, and 75 acres of corn, the killing of his chickens (according to the evidence of plaintiff, 182 in number), the washing away of his house and barn, and the deposit of a thick stratum of sand over his farm. Plaintiff's witnesses testified to his damages in the sum of about $3,000. Defendant's witnesses testified that the value of the destroyed crops alone was over $600. The special findings of the jury were to the effect that plaintiff was damaged nothing by reason of the destruction of his crops, and the injury to his house, barn, and land, and found that he was only damaged in the sum of $1 for loss of chickens. These findings were contrary to all of the evidence. The general verdict in reality was for $1 for

the loss of chickens, and yet there was no contradiction of the evidence of plaintiff that he lost 182 chickens of the approximate value of $60. No syllable of evidence distinguished the cause of the loss of any chicken from the cause of the injuries to the remainder of the property. All of the evidence showed that all of the injuries were occasioned by the same agency, which the jury found to have been the result of defendant's negligence in the construction and maintenance of its bridge and embankment.

The only explanation of the assessment of damages by the jury at $1, deducible from the record, is that the jury was dissatisfied and confused by the instructions of the court; that the nine members of the jury signing the verdict must have felt that, under the instructions of the court, the law was not such that they could comply with their oaths and administer justice; and that they rendered this verdict as a protest against what they considered an unjust condition of the law, and one which they refused to follow to the extent of taxing the costs against plaintiff.

The charge of the court was virtually a direction of a verdict for defendant upon the question of liability. Instructions numbered 10, 12, and 13, read as follows, viz.:

"(10) You are instructed that under the law it was the duty of the defendant railway company, in the location and construction of its railroad line, to construct its bridges across streams in such manner as to offer the least resistance to the current of the stream, and, having done so, that it cannot be charged with the changing of the course or bed of the stream in such manner as to impair the efficiency of its bridge structure, after the same has been permanently built, and if you find from the evidence in this case that the bridge of defendant across the stream at the place complained of was originally located at right angles to the stream, so as to present as small resistance as possible to the flow of waters, and that afterwards the change in the course of the stream caused the current of the stream to strike the bridge at a different angle, and not in a line straight with the opening of the bridge; that this was a matter over which the defendant cannot be held to be responsible. And if you find that when the bridge was constructed it was located at right angles with the stream, and that any of the injury or damage was caused to the plaintiff, by reason of the current of the river, in the flood of 1914, striking said bridge at a different angle from that which existed when constructed, then you will not charge the defendant with such damage."

"(12) The defendant company may construct embankments and dykes to protect its

properties, and to make safe its operation of its road from encroachments of the stream, and from superabundant water in times of flood, but in doing so it must place the embankment and dykes that the natural and probable consequence of such embankment any dykes in times of ordinary flood, will not be caused to overflow the lands of others, and, unless you find from the evidence that the defendant company constructed a dyke and embankment of such excessive size and at such improper places, and in such negligent manner, as would naturally be expected to cause the injuries complained of, then you should find for the defendant.

"(13) By the term 'permanent structure' is meant such a structure as by reason of its size, weight, durability, and use will endure without material alteration except through human labor, and is such as from its own nature remains in the position, and substantially in the condition, in which it was constructed, except for the ordinary repairs made necessary by the use thereof for the purposes for which it was designed."

The first part of instruction numbered 10 assumed that the bridge was a permanent structure; and, on this assumption, the latter part of the instruction directed the jury that no change in the course of the stream in its relation to the openings in the bridge could give rise to a duty upon the part of defendant to alter the openings in the bridge to meet the changed conditions, and that defendant would not be liable for damages caused by the openings of the bridge not carrying off the waters of the stream if such waters, at the time of the flood in question, struck the bridge at a different angle from the angle formed by the stream and bridge at the time of the construction of the latter. The instruction overlooked the relations of the embankment to the change in such angle, and to the causes of the injury, and no other instruction supplied the omission. Under all of the evidence, the principal, if not the entire, cause of the injury was the course taken by a part of the flood waters of the streams so as to cause the waters to approach the opening in the bridge, after deflection by the embankment to an angle different from the original angular relation of the stream and bridge; and this deflection by the embankment, as related to the contention that the deflection was caused by negligent construction and maintenance of the embankment without sufficient openings, was an essential part of the cause of action of plaintiff. The permanence of the bridge and embankment was one of the main questions of fact for the jury, and so recognized by the other instructions and special interrogatories submitted to the jury; and the assumption of permanence, included in this instruction,

invaded this province of the jury. If the structures were not permanent, in the sense hereinafter set forth, a change in conditions would undoubtedly have given rise to new duties upon the part of the railroad company, a consideration of which alternative by the jury was foreclosed by the instruction. The instruction overlooked the relations of a flood, extraordinary or otherwise, to the construction of the bridge and to any altered relations between the stream and structures: while all of the evidence showed that the bridge and embankment were constructed in the year 1905 or 1906, immediately following a similar flood and overflow in 1904, giving rise to a duty in the railroad company to contemplate and prepare for the recurrence of such a flood in the future.

Instruction No. 12 predicated the liability of defendant upon failure to construct the bridge and embankment in such manner as to carry off the waters in times of ordinary flood; while the entire cause of action of plaintiff was based upon injuries resulting from extraordinary flood, which was within the known flood conditions of the river, as evidenced by results of the flood of 1904. The instruction, in this, violated the principles laid down by this court in the case of Missouri, K. & T. R. Co. v. Johnson, 34 Okla. 582, 126 Pac. 567, where it was held to be the duty of the railroad company, in the construction of such a bridge and embankment, and in the maintenance thereof, to meet the known flood conditions of a stream, even though such conditions be extraordinary, and that before the unusual condition, as an act of God, may relieve the liability, it must be the sole cause of the injury as not being coupled with negligence. This rule has been consistently followed by this court in the cases hereinafter cited in our comment on the thirteenth instruction. Plaintiff requested an instruction in line with the doctrine of the Johnson Case, supra, which was refused.

Instruction No. 13, supra, while probably in one sense a correct definition of the term "permanent structure," was too restrictive in its application, as a legal term, in this case. This court has repeatedly held that:

"When a cause of injury is abatable, either by an expenditure of labor or money, it will not be held permanent." City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867; A., T. & S. F. R. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254; St. L. & S. F. R. Co. v. Ramsey, 37 Okla. 448, 132 Pac. 478; C., R. I. & P. Co. v. McKone, 36 Okla. 41, 127 Pac. 488, 42 L. R. A. (N. S.) 709; C., R. I. & P. R. Co. v. Morton, 57 Okla. 711, 157 Pac. 917.

This court in City of Ardmore v. Orr, supra, quoted and expressly disapproved an authority which laid down the rule included in this instruction.

It may be said that, in its exact expression, this rule bears a contradiction, in that every human edifice might be altered by the expenditure of labor or money, and that therefore, under the strict letter of the rule, no artificial improvement could be permanent. However, the spirit of the rule contemplated an extension of its effect, not expressly stated in the former decisions of this court. Giving it such an express extension, the rule would be that a negligent condition in an artificial structure, permanent in its nature, will not be held permanent if such negligent condition is abatable by an expenditure of either labor or money and such abatement is consistent with the rightful use and maintenance of the structure.

Plaintiff requested an instruction in the language of the rule as sustained by the above cases, and it was refused. The abatableness of negligent conditions originating in the construction of the bridge and embankment, if such negligence existed, was a necessary element of the cause of action of plaintiff for maintaining the condition; for negligence in construction, as distinguished from its continuance in the maintenance, had occurred long prior to the acquisition of the lands by plaintiff, and was long since barred by the statute of limitations, if the injury would necessarily have resulted from the negligence in construction. Under the instruction as given, the duty to abate, where it could reasonably be done, was not recognized; and, under the tenth and twelfth instructions, supra, nothing was left to the jury but to decide for the defendant.

These instructions are noted here as bearing upon and explanatory of the peculiar result reached in the verdict. In our opinion, the jury was confused by the instructions, and this confusion resulted in an erroneous assessment of the damages. This court has held that:

"Where a verdict cannot be justified upon any hypothesis presented by the evidence, it will not be allowed to stand." Earley et al. v. Johnson, 58 Okla. 466, 160 Pac. 482.

The part of this verdict which assessed plaintiff's damages violates this rule, and the verdict should be set aside.

Defendant in error contends, in effect, that the verdict and judgment, if erroneous, have not resulted in harm to any rights of plaintiff in error, because, as contended by it, under every condition of the evidence and record plaintiff in error had no cause of action, for the following reasons, to wit: (1) That the right to construct and maintain the bridge and embankments was a federal guaranty under the Congressional grant of right of way and franchise hereinabove mentioned; and (2) that the bridge and embankments were permanent structures, erected and causing the injuries, if any, as permanent injuries, long prior to the acquisition of the land by plaintiff.

The proposition of federal guaranty is clearly not applicable to the situation. The contention of plaintiff was that his injuries resulted from negligence in the construction and maintenance of the bridge and embankment. It can hardly be contended that the federal grant would convey the right not to exercise diligence, or rather the right to be guilty of wrong or negligence. There is no showing of a specific grant of the right to flood lands adjacent to the right of way granted, and we cannot believe that Congress could have intended or implied the right and franchise to construct and maintain the railroad, with its bridges and embankments, in any manner except such as is consistent with the general legal duty of a railroad under similar conditions, which is defined in the cases from this court hereinabove cited. Our conclusion here is the same as was reached by this court in the following cases, viz.: A., T. & S. F. R. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254; C., O. & G. R. Co. v. Drew, 37 Okla. 396, 130 Pac. 1149, 44 L. R. A. (N. S.) 38.

We cannot agree with the theory that plaintiff cannot recover because the bridge and embankments were permanent structures, erected and causing the injuries, if any, as permanent injuries, long prior to the acquisition of the land by plaintiff. The question of the permanence of the structures was one for the jury, under proper instructions. While, in answer to a special interrogatory, the jury found that the structures were permanent as defined in the instructions, the definition of the term "permanent structure," in the instructions was not sufficiently broad to meet the rule announced by this court, as hereinbefore stated. There was a conflict in the evidence upon this question, and under a proper instruction, the finding of the jury might have been different.

Regardless of the question of the permanence of the improvements, the right of action for injuries does not necessarily accrue at the time of the construction of the im-

provement. In cases of injuries resulting from permanent improvements, as to the time when the right of action arises, the distinction seems to be that, where the injury is the natural result of the erection of the permanent improvement, or may be regarded as obviously consequential, the cause of action arises at the time of the construction of the improvement; but that, where the injury is not such natural result, or not obviously consequential, the right of action arises at the time of the actual injury. The line of cleavage seems to lie in the certainty or uncertainty of the injurious result.

As sustaining its position that the injury in this case, if any, resulted at the time of the construction of the improvement, defendant in error cites Gulf, C. & S. F. R. Co. v. Moseley, 161 Fed. 72, 88 C. C. A. 236, 20 L. R. A. (N. S.) 885; St. L. & S. F. R. Co. v. Stephenson, 43 Okla. 676, 144 Pac. 387. These cases do not support the theory of defendant in error. The Stephenson Case, supra, specifically held:

"While the rule is well established that there may be as many successive recoveries as there are successive injuries caused by a permanent structure, when its construction and continuance are not in themselves **necessarily** injurious, yet, where the pleadings and evidence, as in the instant case, show **conclusively** that the permanent character of a railroad embankment, and its continuance as originally constructed, **necessarily** produced the injury to the freehold and caused the depreciation in the value thereof complained of at the time of construction, and that such injury had **wholly occurred** when plaintiff acquired the land, it must be held that she took it in its then known condition." (Emphasis ours.)

The case dealt with **surface** waters and an **obviously consequential** injury.

The Moseley Case, supra, cited by defendant in error, by the Circuit Court of Appeals of the United States, specifically stated that it pertained to obviously consequential injury, and expressly announced the rule we have hereinabove stated as the proper rule, and used this language, viz.:

"It is to be conceded that there is much conflict in the decisions of courts touching the application of the statute of limitations to nuisances of this character. This conflict has arisen especially in reference to the erection of railroad embankments across creeks and swales, draining large areas of adjacent land without sufficient ditches or culverts to carry off the waters on occasions of freshets, whereby the land becomes flooded by overflows, damaging annual crops, and the like. In such case there is not infrequently present elements of uncertainty, such as the insufficiency of the openings in the embankments, which, the presumption may be indulged, the railroad might at any time in the future sufficiently enlarge, rather than submit in the first action to the recovery of all the consequential damages. In the second place, where the damage is to crops, it may depend entirely upon the possibility of the nonrecurrence of the overrunning flood in any given year, or the contingency of no crop being planted thereon, or being cultivated in a product subject to little damage from a temporary overflow. Such are not the conditions of the nuisance in question."

The facts in this case coincide with the antithetical supposition of facts expressed in the above quotation.

The text-writers support the theory that, though the improvement be permanent, if the injurious result is not the necessary consequence, the cause of action arises only when the injury is done, and not at the time of the construction of the improvement. Farnham on Waters and Water Rights, p. 2648; Gould on Waters (3d Ed.) sec. 210. This theory was accepted by this court in the Stephenson Case, above quoted, and in the case of A., T. & S. F. R. R. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254, and by inference in the various overflow cases from this court hereinabove cited. The cases cited by defendant in error go off upon the theory of the permanence of the injury, as distinguished from the cause of the injury, after the injury either has actually occurred, or, assuming the continuance of usual or ordinary conditions, becomes the necessary or obvious result of the permanent improvement. This case is a fair illustration of the predicament in which a plaintiff would find himself, in a suit brought immediately following the construction of the improvements and before the actual injury. If the owner of the land in controversy had brought suit in 1906, immediately after the construction of this bridge and embankment, what would have been the predicate for his assertion of liability or his measure of damages? His damages, though liable to have been incurred, had neither resulted nor were certain to result. It is elemental in the law of damages that negligence, unaccompanied by injurious result, does not give rise to liability. Where, assuming the continuance or recurrence of usual conditions, damage to value is certain to result, the value is immediately depreciated and an injurious result thereby accomplished; but where the damage simply may occur, the element and degree of depreciation are purely speculative, and incapable of estimation, and the injury

is not complete. The point of demarcation between the two classes of cases, in the very nature of things, is not clear, and may not itself be the subject-matter of an invariable rule, but necessarily must be determined from the circumstances of each case, by an application of the general rule as to the measure of certainty of the result.

We must hold that when a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent, it being clear that the abatement of the causal negligent condition in a structure, rightfully maintained except for the negligence, is consistent with the rightful use and maintenance of the structure if the structure is otherwise permanent in its nature; that a cause of action for damages, occasioned by a structure, not permanent under the above rule, arises at the time of the actual injury, successive actions being maintainable for successive injuries, the respective injuries not being total or permanent; that, in cases of injury from permanent cause, the cause of action arises at the time of the actual injury, and not at the time of the creation of the cause where such actual injury is not the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions; and that, in cases of injury from permanent cause, where the injury is the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions, the cause of action arises at the time of the creation of the cause viz., the construction of the improvement.

Under the above holdings, the error in the assessment of the damages of plaintiff was prejudicial to his substantial rights; and the judgment of the lower court should be reversed, and the cause remanded for further proceedings in accordance herewith.

By the Court: It is so ordered.