**OKLAHOMA TURNPIKE AUTHORITY, Plaintiff in Error,**

v.

**Clarence BACON and Helen Edith Bacon, husband and wife, Defendants in Error.**

**No. 37453.**

Supreme Court of Oklahoma.

Nov. 19, 1957.

Looney, Watts, Looney, Hamill & Nichols, Anna B. Otter, Oklahoma City, for plaintiff in error.

Nesbitt & Nesbitt, Miami, for defendants in error.

HALLEY, Justice.

The Oklahoma Turnpike Authority filed this action in the District Court of Ottawa County, against Clarence Bacon and wife to condemn 48.97 acres of defendants' 160 acre farm for use in constructing the Turnpike. The commissioners appointed to assess the damages fixed the sum of $18,500. The court accepted their report and ordered that amount paid into court and disbursed to the defendants.

Both parties demanded a jury trial. The jury returned a verdict for $21,750, and the Turnpike Authority has appealed.

The principal complaint of the Turnpike Authority is that the verdict and judgment based thereon are the result of inadmissible, remote and speculative evidence of possible future injuries to defendants' remaining land as a result of the erection of the turnpike across the southeast portion of the farm. The defendants claim that the erection of the turnpike and two culverts under it is certain to concentrate the flow of water over the remaining portion of their farm land and cause erosion as consequential damages.

The parties will be referred to as plaintiff and defendants as they appeared in the trial court. The plaintiff submits only one proposition which is as follows:

"Jury's consideration of inadmissible evidence of possible and speculative future drainage damages in absence of evidence of actual drainage damages influenced their verdict to plaintiff's prejudice."

In this case there are several elements of damage. They consist principally of the fair market value of the 48.97 acres of land actually taken by the Turnpike Authority, including about 40 acres of land in cultivation and 9 acres of hay land; the fact the defendants have left only about 60 acres of cultivated land, including all their hay land on this farm; the defendants are left an insufficient amount of land to enable them to continue their principal occupation of keeping 20 head of milk cows and selling milk; depreciation by reason of the fact that the remaining 111 acres is over-improved and left in an irregular triangular shape, all of which were proper elements of damages, in addition to the consequential damages from erosion which defendants claim is sure to result from the erection of the two culverts under the turnpike which will concentrate the flow of water over their remaining cultivated land and result in washing or erosion, where before the drainage was even and in a sheet form over their field and caused no damage by erosion. There is no way to determine what percent of the damages allowed by the jury was attributable to any one of the elements of damages named.

Defendants contend that the erection of the turnpike will obviously result in erosion and injury to their land and that consequential damage can be reasonably anticipated because their farm is second bottom land and the land to the south and east is low hill land, but higher than their land, and that heretofore water from the higher land to the south has always flowed to the north over their land in sheet form causing no erosion, but that when concentrated in ditches will naturally cause erosion. The erection of the turnpike fill has concentrated these drainage waters through two culverts, one being under the turnpike in the northeast part of the farm, through which the water, following its natural course would flow over the cultivated land, in concentrated form and naturally result in erosion.

Defendants' witnesses testified, over the objections of the plaintiff, that water flowing through the culvert just southwest of defendants' southwest corner would flow north after leaving that culvert, onto and over defendants' farm land and cause erosion. The defendants contend that the expert testimony of plaintiff's witnesses is sufficient to support their claim. We will discuss this matter later.

We will briefly review first the testimony of defendants' witnesses as to the general damages resulting to defendants' farm from the erection of the turnpike.

The defendant, Clarence Bacon, testified that he bought the farm in 1947 and had since lived there; that he kept 20 milk cows and sold milk; that the Turnpike Authority took about 40 acres of his cultivated land; that his farm was productive and that he had fertilized it; that he had a complete set of improvements in the northwest corner, which were not disturbed by the Turnpike Authority, being a two-story stone house, with 1½ baths,

chicken house, granary, large machine shed, three car garage, a 400 foot water well with electric pump, and water piped to each room in his home, which had a concrete basement and furnace with pipes to each room of the house.

The other witnesses for defendants testified as to the value of the defendants' farm before and after the construction of the turnpike. The highest price fixed on the entire 160 acres was $56,600 and the lowest $54,000, and the value after the taking was fixed from $28,000 to $23,939.38, and the damages were estimated to be from $30,-062.62 to $27,760.62. The witnesses of the plaintiff fixed damages from $8,000 to $6,-600.

The defendants rested after introducing their evidence, but the next day asked to reopen their case for the purpose of introducing further testimony as to the elements of damage which the witnesses on value took into consideration in arriving at their depreciated value of the remainder of the farm after the construction of the turnpike.

The plaintiff objected and moved for a mistrial and continuance. This motion was overruled.

Defendants' witnesses were allowed to testify on the question of possible drainage damage resulting from the erection of the culvert near the southwest corner of defendants' farm. The court limited the additional testimony to elements of damages not covered by witnesses in defendants' testimony on the previous day, that is, damages that might result from the erection of the two culverts by washing and erosion because the water would be in concentrated form as it emerged from the culverts, instead of flowing over the land in sheet form.

One of plaintiff's witnesses, a graduate civil engineer, employed by section engineers retained by the Turnpike Authority for preliminary surveys and work on the area around the Bacon farm, testified that he had run levels to determine the contour of the ground and drainage currents. He had walked over and inspected the area and testified that the lay of the land showed a slight drainage generally toward the northwest. He examined aerial photographs of the area and had examined the official maps and plans of the Turnpike Authority and that it was his opinion as an engineer that the surface waters originating from the southeast of the southwest culvert would proceed northwest through a ditch on the south of the Bacon farm and then on west. He stated that in making plans for drainage they had made provisions to take care of the maximum of rainfall in that area, and that the natural drainage existing prior to the construction of the turnpike would not be changed.

Another witness was called by the plaintiff. He was a surveyor with 14 years experience and was employed by an engineering firm for the Turnpike Authority. He had taken levels across the area involved and said that in his opinion the water will flow northwest along the south line of the Bacon farm and then west; that it would not flow northeast unless it gathered in a pool a foot deep at the mouth of the southwest culvert and that the culvert was sufficient to prevent water from building up to such a height, and that the water would not flow northeast from the culvert and over the Bacon farm and cause damages.

On rebuttal the defendant was recalled and testified that after a rain the water ran through a ditch south of the turnpike and that then the terrain flattens out, and two-thirds of the water here goes down through his land to the north.

Under plaintiff's proposition set out above it is contended that the jury was permitted to consider inadmissible evidence of possible future drainage damages which influenced their verdict. It is clear that the principal issue is whether the jury was prejudicially influenced by the testimony of defendants' witnesses relating to drainage damage to their farm as a result of the erection of the culvert just south of defendants' south line. Plaintiff makes no complaint of the admission of testimony to the effect that the culvert near the east side of the farm will concentrate the flow

of water across the farm and cause erosion.

While it is true that none of defendants' witnesses were experts and two of plaintiff's witnesses were experts, capable of and actually making a survey of the land and running levels to determine the direction of drainage, we note that the qualifications of each witness was before the jury. There is no complaint as to the instructions given by the court. The jury was instructed that they should consider the " * * * opportunity (of witnesses) of knowing the matters about which the witness has testified."

Defendants' witnesses who testified that the culverts would cause drainage in concentrated form and result in erosion, based their opinion on their observation of the lay of the land.

The defendants have pointed out that one of plaintiff's witnesses testified that he ran levels each 100, 200 and 300 feet from station 535 (485 feet southwest of the southwest culvert) to the northeast culvert. His figures show station 535 has an elevation of 899.2 feet and that the land gradually gets lower so that it has an elevation of only 886.5 feet at the northeast culvert, or a drop of 12.7 feet in 2215 feet, or less than one-half mile, which clearly shows that the general course of drainage is to the northeast.

Plaintiff's other witness, a surveyor, testified levels taken by him at a number of points, numbered 1 to 18. Defendants prepared a map on which they have located and given the ground levels testified to by this witness showing the ground levels north of the southwest culvert. The exhibits from which defendants get their data are defendants' exhibit No. 1 and plaintiff's exhibit H, which is a large colored map. A careful examination of these exhibits show without doubt that the elevation of the southwest culvert is 897.3 feet, which is higher than some 15 points on defendants' land just north of the culvert, and indicates that water flowing through the southwest culvert will flow onto and over the defendants' farm rather than to the west.

Both parties cite the case of Oklahoma Turnpike Authority v. Strough, Okl.1954, 266 P.2d 623, 625. We cannot agree with the plaintiff that this decision is conclusive in its favor in the case before us. The Strough case is a condemnation by the plaintiff here and the defendant land owners sought damages which might result to their pecan trees by possible silting upon their land by reason of the erection of only one bridge under the turnpike to carry the water from two creeks through a single opening under the turnpike. The Turnpike Authority submitted expert evidence to the effect that the one opening under the turnpike was sufficient to carry promptly all possible water that might accumulate on defendants' land.

■ In the Strough case, as in the case before us, it had not rained sufficiently after the erection of the turnpike to prove or disprove the contention of either party with certainty. The rules of law announced in the Strough case are not disputed by either party. The defendants claim that the facts there are so different from the facts in the case before us that the rules of law there announced are not applicable. In the body of the opinion in the Strough case it is said:

> "As to when his cause of action accrues for the recovery of consequential damages, depends entirely upon whether or not they are obvious or may be reasonably anticipated before they actually occur."

■ In City of Stillwater v. Robertson, 192 Okl. 395, 136 P.2d 923, the rule is announced in the first paragraph of the syllabus as follows:

> "Where an injury is the natural and obvious result of the erection of a permanent improvement an action therefor accrues at the time the improvement is completed."

In Fletcher v. City of Atlus, 188 Okl. 342, 108 P.2d 781, 783, followed by the court in City of Stillwater v. Robertson, supra, the court said:

"As stated in Pahlka v. Chicago, R. I. & P. Ry. Co., supra [62 Okl. 223, 161 P. 544], the line of cleavage lies in the certainty or uncertainty of the injurious result, and the question of whether the injuries are the natural result, or may be regarded as obviously consequential, of the erection of the permanent improvement. Such question presents an issue of fact peculiar to each individual case, and such issue should be presented to a jury, under proper instructions, for determination. * * *"

The above rules of law are well established. The jury was instructed that it could not return a verdict for damages based on conjecture, speculation or surmise, and there were no exceptions to the instructions given and no request for additional instructions. The real question is whether there is any competent evidence reasonably sustaining the verdict of the jury assessing the damages to the plaintiff in the sum of $21,750. The Commissioners appointed to assess defendants' damages reported they were damaged in the sum of $18,500.00, which is more than double the amount estimated by any of plaintiff's witnesses. There is no way to determine just what elements of damage they took into consideration in making their assessment.

The Commissioners took the usual oath to inspect the land and consider the injury sustained by reason of the appropriation thereof " * * * and the amount of the injury and damage done to the remainder of the real estate, either directly or indirectly * * *" by reason of the erection, operation and maintenance of the turnpike over, across and upon said land.

In the case before us the jury heard the opinions of experts and non-experts on the issue of whether damages to defendants' land would result from the erection of the culverts which would materially concentrate the flow of water to the north. Plaintiff emphasizes the fact that its two expert witnesses gave their opinions that damages from erosion would not follow. The rule as to the effect of expert testimony in cases of this character is expressed in the recent case of Peppers Refining Co. v. Spivey, Okl., 285 P.2d 228, 229, where it is said in the second paragraph of the syllabus as follows:

"In civil cases the jury may follow their own convictions, based on their own experience, observations and common knowledge, although contrary to the expert opinions."

The question in the Strough case, supra, was whether the opening under the highway was sufficient in size to carry off the flood waters after heavy rains. The engineers who had figured the volume of water that might be expected to fall, said that the opening was sufficient to carry it off.

In the case before us the principal question was whether the waters that would naturally flow through the two culverts would flow over defendants' land and injure it by erosion, and as has been said, there had not been sufficient rain fall at the time of trial to prove or disprove either contention.

Plaintiff does not specifically deny that the water flowing through the northeast culvert will flow over defendants' land in concentrated form after flowing through that culvert. While plaintiff's expert witnesses were positive that the water from the culvert under the turnpike just southwest of defendants' southwest corner will not flow over the farm land, the actual figures given by them clearly show that the points on the farm land north to which levels were run are lower than at the point of the culvert.

We are bound to conclude that levels run by the experts for plaintiff contradicts their opinion testimony and tend to corroborate defendants' non-expert witnesses who were positive that the water passing under the southwest culvert would

flow north to northeast in concentrated form over defendant's farm land and result in damage by erosion. The judgment is affirmed.

CORN, V. C. J., and DAVISON, WILLIAMS and JACKSON, JJ., concur.

WELCH, C. J., and BLACKBIRD and CARLILE, JJ., dissent.