# CITY OF ARDMORE v. ORR.

No. 2086.   Opinion Filed January 21, 1913.

(129 Pac. 867.)

1. **MUNICIPAL CORPORATIONS—Street Grading—Surface Water —Injury to Abutting Premises—City's Liability.** Where a city in grading a street and its cross-streets causes the surface waters on said cross-streets, flowing into the same from adjacent territory, to be diverted from their natural course, and to be collected and carried together with the waters of the main street to a low point on said street, and negligently fails to provide sewers as an outlet for said waters, or in providing sewers, negligently provides sewers inadequate for an outlet for said waters, and thereby causes said waters so collected and conveyed to such point to back upon and overflow abutting premises which are four inches above the grade established by the city, and over which said waters did not theretofore flow, the city is liable to the owner of such abutting property for the damages caused thereby.

2. **TRIAL—Time of Trial—Issues.** Section 5834, Comp. Laws 1909, provides when actions are triable. Under its provisions, when a demurrer to a petition is overruled, but it is not adjudged frivolous and leave to answer is given, the case is not triable upon issues of fact until ten days after the filing of the answer; and it is error to compel, over the objection of a party to the action, a trial of the case on the date such demurrer is overruled and the answer filed.

3. **DAMAGES—Real Property—Permanent and Temporary Injuries.** For negligent injuries to realty which result from a cause susceptible of remedy or abatement, the owner is entitled to recover therefor only such damages as had accrued on account of the impaired or lost use of his property up to the time of the commencement of his action. For injuries resulting from permanent cause, the owner may recover in a single action his entire damages, to wit, that amount which represents the permanent depreciation of the realty in value in consequence of the injury.

4. **SAME.** When a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent.

5. **MUNICIPAL CORPORATIONS — Defective Sewers — Injury to Abutting Property—Damages.** The owner of a lot sued a city for damages resulting from the negligent construction of sewers inadequate to carry off storm and surface waters which the city had, by grading its streets, diverted from their usual course, and brought to a point near plaintiff's property. The volume of waters, being too great to be discharged through the sewers provided, were forced back upon plaintiff's property, thereby damaging and destroying certain personal property, and rendering less suitable for business the buildings thereon. The defect in

City of Ardmore v. Orr.

the sewers being remedial by expenditure of money and labor, it was error for the court to authorize the jury by its instructions to consider as an element of plaintiff's damages future loss of rents and depreciation in the value of the real estate.

(Syllabus by the Court.)

*Error from District Court, Carter County;*
*W. L. Barnum, Assigned Judge.*

Action by J. T. Orr against the City of Ardmore. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Defendant in error, hereinafter called plaintiff, filed his petition in the district court of Carter county on the 17th day of October, 1908, against plaintiff in error, hereinafter called defendant or the city, in which he alleges that he is the owner of lot No. 20, in block 233, situated and fronting on what is known as Caddo street, in the city of Ardmore, an incorporated city of the first class, and that said property was damaged on account of certain acts of the city which, as alleged, are, in substance, as follows: Situated on plaintiff's lot are three buildings, one of which is a frame and the other two are brick. Prior to 1907 the surface waters falling and flowing on Caddo street were drained off through two stone sewers constructed under a railway track on the east side of Caddo street. The opening of one of the sewers was at a point about 150 feet from where Main street intersects Caddo street, and the opening of the other was at a point near where Fourth avenue intersects said street, and, until the acts of the city hereinafter mentioned, these sewers were sufficient to drain thoroughly all the waters flowing into Caddo street. Caddo street, prior to 1907, was so graded that the low point of said street is at a point where the first-named sewer opens into said street, and all the waters flowing from the south and for a number of blocks from the north on said street flow to that point. During the spring and summer of 1907 the city graded and paved Caddo street, and closed up the opening in the sewers near Fourth avenue, and diverted the waters which naturally run through that sewer and turned them so they run down to the opening of the sewer near Main street. At the same time the city made the

opening of the last-named sewer so small that it was not capable of conducting and carrying off all the waters that flowed thereto. During the same spring and summer the city graded various streets which cross Caddo street from east to west in such a way that it diverted all the waters which run down said cross-streets, and threw them into Caddo street. Prior to this time the natural drainage took care of the waters running down said cross-streets, but by reason of the grading of such streets the waters therein were turned into Caddo street and forced to find their outlet through the above-mentioned sewers, which were not large enough for that purpose. As a result thereof, when a rain occurred in the early part of the year 1908, the waters accumulated on Caddo street at the low point, and overflowed plaintiff's property. Plaintiff had constructed his sidewalks and his buildings at a grade about four inches higher than the grade required by the survey of the city, but the waters nevertheless overflowed his property and damaged same. The municipal authorities of the city, after having been notified by plaintiff of the insufficiency of the sewers and the effect on the grading of the streets upon plaintiff's property, causing it to be overflowed and damaged, failed and refused to correct same. Plaintiff alleges that one of his buildings is occupied by himself for bottling works purposes, and that a considerable amount of his property situated in this building was either damaged or destroyed by the flood waters, in the amount of $50; that the other two buildings situated on said lot were rented by him to parties for business houses; that, on account of the constant danger of overflow, his tenants refused to remain in the property; that he lost rents on said buildings; and that the same have been rendered practically worthless, and he is unable to rent same at any price, and he prays for damages in the sum of $2,500. After defendant's demurrer to this petition was overruled, it filed an answer, which, after admitting certain allegations of the petition, denies that prior to the grading of Caddo street and the construction of the improvements thereon named in plaintiff's petition there were sufficient curverts to carry off all the waters on that street during unusual rains and cloudbursts. It admits the paving of the streets, but denies it negli-

gently and carelessly closed up or reduced the size of the sewers, as alleged in plaintiff's petition, or that the waters have so accumulated upon Caddo street as to exceed the capacity of said sewers.   It alleges that the grading done by it was under the supervision of a skillful engineer, and that all said work was done in a skillful manner; and that the city had not been guilty of negligence in the construction of the sewers or in the paving of its streets, and made other allegations of defense which are not necessary to be stated.

A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $465.   It is to reverse that judgment that this appeal is prosecuted.

*J. B. Moore,* for plaintiff in error.

HAYES, C. J. (after stating the facts as above).   Defendant's first assignment of error complains of the action of the court in overruling its demurrer to plaintiff's petition.   The gist of plaintiff's cause of action is summed up in his petition in the last paragraph as being the wrongful acts, negligence, and carelessness of defendant in closing up one of the storm sewers, and reducing the size of the other so as to make it too small to carry off the waters which the grading of Caddo street concentrated at that point, and which resulted from diverting a large part of the surface water from its natural drainage on the cross-streets into Caddo street.

This court has had occasion to consider and discuss the right of a proprietor under the rule at common law to divert or fight back surface water from his premises, and the conclusion of this court is that the rule supported by the weight of the American authorities from states in which the common-law rule prevails, as well as by some of the recent English cases, is that one may not in diverting surface water from its usual and ordinary course collect and convey by embankments, ditches, or artificial channels such water to the premises of another and therefrom permit it to overflow the lands of such proprietor, which, before the construction of the roads, ditches, or artificial channels, it did not overflow.  *Chicago, R. I. & P. Ry. Co. v. Johnson,* 25 Okla. 760,

107 Pac. 662, 27 L. R. A. (N. S.) 879; *Chicago, R. I. & P. Ry. Co. v. Davis,* 26 Okla. 434, 109 Pac. 214.

In *Town of Norman v. Ince,* 8 Okla. 412, 58 Pac. 632, the act of the city complained of was that it had carelessly and negligently constructed a standpipe adjacent to plaintiff's property which overflowed and discharged water on plaintiff's premises, by reason of which the premises became worthless. The city defended upon the ground that as a municipal corporation it was acting under authority of the statute, and could not be subjected to liability for damages arising from the exercise of such authority, so long as such authority was properly exercised and not exceeded. In the opinion a number of cases are cited, supporting the conclusion of the court that the city was liable, that are in point in the case at bar, among which are: *Field v. Inhabitants of West Orange Tp.,* 36 N. J. Eq. 118; *Inhabitants of West Orange Tp. v. Field,* 37 N. J. Eq. 600, 45 Am. Rep. 670; *Ashley v. City of Port Huron,* 35 Mich. 301, 24 Am. Rep. 552; and Mr. Justice Hainer, delivering the opinion of the court, said:

"Applying these well-settled principles to the case under consideration, it must follow that a municipal corporation, in the exercise of its corporate powers to construct and maintain public works, has no right to collect water by artificial means, and discharge it, or permit it to discharge or overflow upon the premises of an adjacent freeholder, so as to interfere with his possession. And in this respect a municipal corporation stands upon the same footing as a private individual, and incurs the same liability. Manifestly, for a municipal corporation to collect water by artificial means, such as a water standpipe, and conduct it in such a careless and negligent manner as to allow it to overflow and flood the premises of an adjacent lot owner, is such an invasion of private property as to constitute an appropriation of it to the public use, and the principle exempting municipal corporations from liability arising from damages occasioned by the exercise of their discretionary powers in the construction and maintenance of public works does not apply, and the corporation is liable for damages resulting therefrom. The same rule of law which protects the rights of the property of one citizen against the invasion of another citizen must protect it from similar aggressions on the part of municipal corporations. The petition of the plaintiff states a good cause of action, and the demurrer, therefore, was properly overruled."

In the recent case of *City of Chickasha v. Looney,* not yet officially reported, 128 Pac. 136, it is said in the syllabus:

"It is an actionable wrong for a municipal corporation to negligently construct or maintain a sewer whereby surface waters are diverted and by artificial means collected in a body and discharged upon growing crops of a private individual to his detriment."

Measured by the rule established by the foregoing cases in this jurisdiction, plaintiff's petition states a cause of action. In support of his contention to the contrary, counsel for defendant has cited and relied upon *Adams v. Oklahoma City,* 20 Okla. 519, 95 Pac. 975. We think that the facts in that case distinguish it from the case at bar in that the action complained of therein was not that the surface waters had been diverted from their usual course and brought to overflow upon plaintiff's premises, where they had not flowed before, but that the city in grading its streets to the established grade by elevating same turned back the surface water therefrom which subsequently overflowed the grade of the street and down over plaintiff's property. The exact question decided in that case is accurately expressed in the first paragraph of the syllabus as follows:

"Where a city in the exercise of its lawful authority (section 443, Wilson's Rev. & Ann. St. 1903) first establishes a grade on a street, and grades same with reasonable skill and care, it incurs no liability for consequential damages to abutting or adjacent proprietors."

There was in that case no contention of negligence or lack of proper construction of the work by the city. The city in the instant case has done more than just turn back the surface waters that flowed upon and across its streets. It has collected the waters flowing into Caddo street and into some of its cross-streets from the adjacent territory, diverted such waters from their usual course, and carried them to a low point near plaintiff's premises and negligently failed to provide a sufficient outlet for them to escape, and by reason thereof such waters, unable to escape, backed upon plaintiff's premises which have been elevated by him above the grade prescribed by the city and effected the damages complained of.

Upon overruling defendant's demurrer, the court ordered that defendant file its answer within 30 minutes, and the cause proceed to trial. After filing its answer, defendant moved the court for a continuance of the cause, upon the ground that the issues had not been made up until that date. Section 5834, Comp. Laws 1909, reads:

"Actions shall be triable at the first term of court, after or during which the issues therein, by the time fixed for pleading are, or shall have been made up. When the issues are made up, or when the defendant has failed to plead within the time fixed, the cause shall be placed on the trial docket, and if it be a trial case shall stand for trial at such term ten days after the issues are made up, and shall, in case of default stand for trial forthwith. When any demurrer shall be adjudged frivolous the cause shall stand for hearing or trial in like manner as if an issue of fact had been joined in the first instance."

This section authorizes a case to be set for trial at any time during a term, not earlier than ten days after the issues are made up, whether made up within the time fixed to plead before the term or during the term. *Swope & Son v. Burnham, Hanna, Munger & Co.,* 6 Okla. 736, 52 Pac. 924. An issue of law may be tried at any time. But that it was not contemplated, when a demurrer shall be overruled, that a defendant may be forced into trial immediately, unless such demurrer is adjudged to be frivolous, is indicated by different portions of the Code. The last sentence of the foregoing sections provides that, when any demurrer shall be adjudged to be frivolous, the cause shall stand for hearing or trial in like manner as if the issues of fact had been joined in the first instance. This sentence, following immediately the provision of the preceding sentence that the case shall stand for trial at the term for which it is set ten days after the issues are made up, and, in case of default, shall stand for trial at once, we think renders the meaning of the statute susceptible of little, if any, doubt. In addition thereto, section 5832 provides:

"No witness shall be subpœnæd in any case while the cause stands upon issues of law; and whenever the court shall regard the demurrer in any case as frivolous, and put in for delay only,

no leave to answer or reply shall be given, unless upon payment of all costs then accrued in the action."

A party who has a demurrer pending, under this statute, is without power to prepare for trial, for he cannot have subpœnas issued for his witnesses; but the ten days' time required to intervene by section 5834 between the date the issues are made up and the trial of the cause affords an opportunity for the parties to obtain the presence of their witnesses. The demurrer was not adjudged frivolous by the trial court. Defendant was permitted to file his answer without any condition as to payment of the costs incurred up to that time, which he should have been required to do if the demurrer had been frivolous, and under the state of the law as determined by the decisions in this jurisdiction at the time of the trial—for none of the cases except the Adams case and the *Town of Norman v. Ince, supra,* had been at that time decided—defendant's demurrer should not be held frivolous, as the authorities from other jurisdictions are not harmonious upon the question which the demurrer presented. The cause, therefore, did not stand for trial on the date the demurrer was overruled, and could not under the statute, without agreement of the parties, be set for earlier than ten days after the time defendant filed its answer; and it was error to compel a trial of the case, over defendant's objection, on the date it was tried. *City of Eureka v. Ross,* 64 Kan. 372, 67 Pac. 849; *Harris v. Salt Co.,* 57 Kan. 24, 45 Pac. 58; *Rice et al. v. Simpson et al.,* 26 Kan. 143; *Rice v. Hodge,* 26 Kan. 164; *Gapen v. Stephenson,* 18 Kan. 140.

The allegations of plaintiff's petition as to the extent of damages sustained by him are substantially that personal property of the value of $50, situated in the building at the time of the flood, was destroyed; that on account of said overflow and the probability of subsequent overflows the tenant in said building refused to remain therein, and that plaintiff had lost rents thereon; that his property had been rendered practically worthless, as a result of which he had sustained damages in the sum of $2,500. There is evidence to sustain the allegation as to the loss of the personal property. There is also evidence that at the time

of the overflow one of the buildings was occupied by a tenant who paid as rents thereon $35 per month; that this tenant vacated the building because of its being rendered unsuitable by the overflow waters, and because of the probable recurrence of such overflow in the future; that plaintiff was unable to secure a tenant for said building for several months, after which he secured a tenant at the reduced rent of $20 per month. There is also evidence that because of the overflow and the probability of subsequent overflows the property had depreciated in value, the exact amount of which is not established by the evidence. The instructions of the court, given over defendant's objection, authorized the jury to consider as a measure of plaintiff's damages all loss of rents sustained up to the trial of the cause and loss of rents that will result in the future, and all other damages that plaintiff has sustained, or may sustain in the future. The language of the instructions given is so comprehensive as 'to authorize a recovery of both the loss for rents in the past and in the future and for depreciation in the value of the property. In this the court committed error. To permit a recovery for both is to permit the recovery of double damages. It would be like permitting one to recover the value of property as for conversion and at the same time to recover the value of the use thereof during the time he is deprived of it.

If the damages by plaintiff are permanent, then the measure thereof is the value of the property destroyed, or the depreciation in the value of the property injured. The loss of rental value does not constitute part of the damages where there is a permanent damage to the value of the property; and, where the damage is not permanent, only damages occurring up to the time of the action are recoverable, and all future damages that may occur must be recovered by subsequent actions, and it is the duty of the court to see that one does not overlap the other. *Seely v. Alden,* 61 Pa. 302, 100 Am. Dec. 642; *City of San Antonio v. Estate of Mackey,* 22 Tex. Civ. App. 145, 54 S. W. 33; Sutherland on Dam. sec. 1042.

There is some confusion among the authorities upon the proper measure of damages in cases of the character of the in-

stant case.   The divergence arises in determining whether the particular nuisance or injury is permanent.   If it is permanent, then the injured party may recover in one action all damages he has or may sustain as a result of the negligent·construction of the improvements complained of; but, if it is not permanent, then he may recover only such damages as he has sustained up to the time of the institution of his action.   Section 1039, Sutherland on Dam.; *Chicago, R. I. & P. Ry. Co. v. Davis*, 26 Okla. 434, 109 Pac. 214.   Some of the authorities make the test of permanency whether the structure or improvement from which the injury flows may be abated.   The test in *Troy v. Railroad Co.*, 3 Foster (23 N. H.) 83, 55 Am. Dec. 177, and a line of cases following that case is that:

"Whenever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but manual labor, then the damage is an original damage, and may be at once fully compensated."

But the soundness of this rule has been criticised as not being supported by the best reason or by the weight of authority. This rule has the effect to license the maintenance of a continuous nuisance by payment of damages as for an original damage.   In *Uline v. N. Y. Cent. & H. R. Co.*, 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661, where the damages were sustained from a diversion of surplus waters into the basement of plaintiff's house by a change in the grade of a street, it is said:

"What right was there to assume that the street would be left permanently in a negligent condition, and then hold that the plaintiff could recover damages upon the theory that the carelessness would forever continue?   A municipality or a railroad corporation, under proper authority, may erect an embankment in a street; and, if the work be carefully and skillfully done, it cannot be made liable for the consequential damages to adjacent property.   But, if it be carelessly and unskillfully done, it can be made liable.   It may cease to be careless, or remedy the effects of its carelessness, and it may apply the requisite skill to the embankment; and this it may do after its carelessness and unskillfulness, and the consequent damages, have been established by a recovery in an action.   The moment an action has been commenced shall the defendant, in such a case, be precluded from

remedying its wrong? Shall it be so precluded after a recovery against it? Does it establish the right to continue to be a wrongdoer forever by the payment of a recovery against it? Shall it have no benefit by discontinuing the wrong? And shall it not be left the option to discontinue it?"

The Supreme Court of Alabama in a recent case, which was an action for damages for the overflow of plaintiff's land, caused by the defendant's obstructing the natural flow of the waters in a creek, said:

"Further, if the proof shows with reasonable certainty a wrong by which the value of property is affected, permanent and unabatable in law or in fact, damages should be allowed for the whole injury, past and prospective; otherwise, successive actions are to be maintained. And this alternative the courts incline to favor, to the end that the defendant may not acquire the right to continue the wrong on the one hand, and, on the other, that he may have a *locus poenitentiae,* and be not compelled to pay for a permanent wrong to which he would put an end, perhaps, once it is adjudicated to be a nuisance. This conclusion is supported by the weight of reason and authority." (*Sloss-Sheffield Steel & Iron Co. v. Mitchell,* 161 Ala. 278, 49 South. 851.)

In case of doubt respecting the character of the injury courts are inclined to favor the right to bring successive actions, and therefore hold that the injury is not permanent. Section 1039, Sutherland on Dam.; *Schlitz Brewing Co. v. Compton,* 142 Ill. 511, 32 N. E. 693, 18 L. R. A. 380, 34 Am. St. Rep. 92; *City of Nashville v. Comar et ux.,* 88 Tenn. 415, 12 S. W. 1027, 7 L. R. A. 465. In the last-mentioned case the opinion, which was delivered by Lurton, J., now Associate Justice of the Supreme Court of the United States, ably reviewing the entire question and the diverging cases thereon, concludes with this language:

"It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, where the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that, where the cause of the injury is one not presumed to continue, the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance."

In that case, as in the case at bar, the damages sought to be recovered resulted from the negligent construction of a sewer, wherefrom, in times of unusual freshets, waters were discharged upon the premises of plaintiff. An instruction of the trial court authorizing a recovery for depreciation in the value of the freehold was held erroneous.

In *Railway Co. v. Cook*, 57 Ark. 387, 21 S. W. 1066, it is said:

"If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage in legal contemplation, whether for past or prospective losses, is recoverable in one action; but if the wrong be continuing, and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened."

In the case at bar, the city in grading its streets and constructing the sewers was acting within its lawful authority. Its wrong consists in negligently constructing the sewers with a capacity inadequate to carry off the surface waters which are collected from the courses in which they have flowed heretofore, and are brought to the point where the sewers are constructed to be discharged. If said sewers are enlarged or additional sewers built to carry off these waters, then no further injury will result to plaintiff; and it cannot be presumed that the city, upon its having been determined that the collection of the waters at the point near plaintiff's property and the negligent construction of said sewers to carry it off is unlawful, will not remedy the same so as to prevent further injury. To permit plaintiff to recover for future loss, which will not occur if the defects in the construction of said sewer are corrected, would be unjust to the city. On the other hand, to measure plaintiff's damages by only the depreciation in the value of his property that has occurred up to this time, when subsequent overflows may have the result to entirely destroy the value of his property, for which no action would lie to recover for such injury, because barred by the present action, would make the establishment of plaintiff's damages in the instant case a hazardous undertaking to him. The instructions

DECEMBER TERM, 1912.—Vol. XXXV. 317·

of the court should have defined the measure of plaintiff's damages to be the value of the property destroyed by the waters, the loss of rent resulting from his buildings being vacated for the period they were vacated, and the loss of rents occasioned by depreciation in the rental or usable value of the property accruing up to the time of the bringing of this action.

The judgment of the trial court is reversed and the cause remanded.

WILLIAMS, KANE, and DUNN, JJ., concur; TURNER, J., not participating.