## LUNDY v. ATCHISON, T. & S. F. RY. CO.

No. 12193—Opinion Filed Oct. 30, 1923.

Rehearing Denied Dec. 11, 1924.

1. Railroads—Actions for Damages—Federal Control—Parties.

In an action for injury to land and crops alleged to have occurred in May, 1918, and occasioned by high water, which it is claimed was due to insufficient outlet openings in a railroad grade or dump, the Director General of Railroads is the proper party defendant under General Order No. 50-A of the United States Railroad Administration.

2. Action—Permanent Improvement—Injury Therefrom—When Right of Action Accrues.

When an injury to lands and crops results from the construction of a permanent improvement in combination with other causes, but such injury is not the natural and obvious consequence of such construction, and where such improvement has been maintained for a long period of time prior to such injury, the cause of action therefor arises and accrues at the time of such injury.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kay County; J. W. Bird, Judge.

Action by C. Lundy against the Atchison, Topeka & Santa Fe Railway Company to recover damages in the sum of $200 for injury to lands and crops of plaintiff. Motion by defendant to dismiss the action sustained, and plaintiff appeals. Affirmed.

The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court. The facts are sufficiently stated in the opinion.

W. S. Cline and Wm. H. Cline, for plaintiff in error.

Cottingham, Hayes, Green & McInnis, for defendant in error.

Opinion by LOGSDON, C. Only one question is presented by this appeal, and that is whether plaintiff is entitled to maintain his action against the defendant or should he have pursued his remedy against the Director General of Railroads. The trial court sustained the motion of defendant to dismiss the action.

"It is therefore ordered that actions at of railroad across the southeast corner of plaintiff's land in Kay county, raising a grade or dump thereon about four feet in

height, said grade extending for some distance below plaintiff's land. When this was done is not shown by the record, nor is it material, except that it is alleged to have been done "long prior to December 31, 1917." During May, 1918, about 140 acres of plaintiff's land was covered by water to a depth of about four feet, which remained thereon for a period of 24 hours, inflicting damage to crops, land, and stock of plaintiff to the alleged amount of $2,-700. Plaintiff alleges that such damage was caused by the careless and negligent construction of said grade or dump by defendant, in that defendant failed to provide sufficient outlet for the surplus water accumulated and held by said grade or dump.

Defendant's motion to dismiss the action is based upon General Order No. 50-A, made January 11, 1919, by the United States Railroad Administration, the material provisions of which are as follows:

"It is therefore ordered that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damages to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against the Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures.

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may upon application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

Plaintiff does not specify in his brief just what he relies on for reversal, but from the line of authorities cited and quoted from it is assumed that he relies on two propositions, viz.: First, that General Order No. 50-A is void as being in excess of the authority of the Director General of Railroads under act of Congress of March 21, 1918; and, second, that the cause of action arose prior to the beginning of federal control of the railroads, and therefore was a vested right at that time which could not be interfered with.

In support of his first proposition plaintiff cites Vaughn v. State (Ala.) 81 South. 417; Lavalle v. Northern Pac. Ry. Co. (Minn.) 172 N. W. 918; Gowan v. McAdoo, Director General of Railroads (Minn.) 173 N. W. 440.

Vaughn v. State, supra, was a criminal prosecution for receiving stolen property. The indictment alleged ownership of the property in the Louisville & Nashville Railroad Company, which was bailee thereof for transportation and delivery. It was stipulated that at the time of the shipment, at the time of the larceny, and at the time of receiving of the stolen property, this railroad system was under control of the United States Railroad Administration, Defendant demurred to the evidence on the ground of variance. This was the question before the court. While there is a lengthy and very exhaustive discussion of the power of Congress, of the President, and of the Director General to mobilize and commandeer the transportation systems of the country in time of war, and while this discussion is very erudite and shows the comprehensive legal learning of the writer, much of it was unnecessary to a decision of the question raised. The gist of the decision is contained in the closing paragraph, and is as follows:

"There is no proof in this case that the railroad administration, in the exercise of federal control, has excluded the transportation companies from the exercise of their functions in the operation of their respective systems, and we cannot assume that it has done so contrary to the manifest purpose and spirit of the authority conferred by the act of Congress, and the proclamation of the President.

"The foregoing considerations lead us to hold that the Louisville & Nashville Railroad Company is under federal control and is exercising its functions and operating the system as an agency of the government and as such was bailee of the property alleged to have been stolen, and the ownership thereof was properly laid."

Lavalle v. Northern Pac. Ry. Co., supra, sustains plaintiff's contention, but the opinion is by a divided court and was rendered two years before the question was definitely settled by the United States Supreme Court in Missouri Pac. R. R. Co. v. Ault, 256 U. S. 554.

The decision in Gowan v. McAdoo, Director General, supra, is expressly rested on the decision in the Lavalle Case, and is by the same court.

In Missouri Pac. R. R. Co. v. Ault, 256 U. S. 554, the validity of General Order No. 50-A was directly in issue and was expressly sustained by the court in the following language:

"As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the government, the provision in Order No. 50, authorizing the substitution of the Director General as defendant in suits then pending was within his power: the application of the Missouri Pacific Railroad Company that it be dismissed from this action should have been granted; and the judgment against it should, therefore, be reversed."

Plaintiff's first contention is, therefore, not well founded and cannot be sustained.

The second proposition of plaintiff is sustainable both on reason and authority if it is properly predicated. Therefore the inquiry is, Did plaintiff's cause of action arise prior to December 31, 1917, and was it a vested right on that date?

Plaintiff's petition is silent as to when the grade or dump was constructed except for the allegation that it "was built long prior to December 31, 1917." It is therefore safe to assume that if it had been built within the period of limitation a more specific allegation would have been made. Plaintiff seeks to avoid the application of General Order No. 50-A to this case as one "growing out of the possession, use, control or operation" of the railroad by the Director General by invoking the doctrine of permanency in his brief in the following language:

"The cause of action in this case was occasioned by the negligent construction of the railroad bed by the railroad company, but the action did not accrue until the damages actually occurred, which was during the early part of May, 1918."

This grade or dump having been built "long prior to December 31, 1917", and no resultant injury to plaintiff's lands or crops having occurred until May, 1918, it seems clear that the injury then suffered was not the natural and obvious result of such construction, but that other and independent causes combined with such construction to produce the conditions resulting in the instant loss. It is not the character or permanence of the improvement of which plaintiff complains, but that "defendant failed and neglected to provide sufficient outlet for the water that would accumulate by reason of the railroad bed." Obviously such defect, when found to exist, is remediable, and admittedly under the allegations of the petition such defect was not demonstrable until the concurrence of other causes therewith. In the case of Pahlka v. Chicago, R. I. & P. Ry. Co., 62 Okla. 223, 161 Pac 544, this court said:

"The text-writers support the theory that, though the improvement be permanent, if the injurious result is not the necessary consequence, the cause of action arises only when the injury is done, and not at the time of the construction of the improvement. Farnham on Waters and Water Rights, p. 2648; Gould on Waters (3rd Ed.) sec. 210. This theory was accepted by this court in the Stephenson Case, above quoted, and in the case of A., T. & S. F. R. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254.

See, also, as supporting the principle above announced: Chicago, R. I. & P. R. Co. v. Bahr, 78 Okla. 78, 188 Pac. 1058; St. Louis & S. F. R. Co. v. Ramsey, 37 Okla. 449, 132 Pac. 478; Ponca Refining Co. v. Smith, 73 Oklahoma, 174 Pac. 268; City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867; C., R. I. & P. Co. v. McKone, 36 Okla. 41, 127 Pac. 488; C., R. I. & P. Co. v. Morton, 57 Okla. 711, 157 Pac. 917.

It is therefore concluded that plaintiff's cause of action arose and accrued at the time of the injury in May, 1918. This being determined, the following language from the opinion in the Ault Case, supra, is applicable:

"The company is clearly not answerable in the present action if the ordinary principles of common-law liability are to be applied. The Railroad Administration established by the President in December, 1917, did not exercise its control through supervision of the owner-companies, but by means of a Director General through 'one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing.' Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135, 148. This authority was confirmed by the Federal Control Act of March 21, 1918, c. 23, 40 Stat. 451, and the ensuing Proclamation of March 29, 1918, 40 Stat. 1763. By the establishment of the Railroad Administration and subsequent orders of the Director General, the carrier companies were completely separated from the control and management of their systems. Managing officials were required to sever their relations with the particular companies and to become exclusive representatives of the United States Railroad Administration.' U. S. R. R. Adm., Bulletin No. 4, pp. 113, 114, 313. The railway employes were under its direction and were in no way controlled by their em-

ployers. See Bulletin No. 4, p. 168, sec. 5; 198, et seq.; 330 et seq. It is obvious, therefore, that no liability arising out of the operation of these systems was imposed by the common law upon the owner-companies, as their interest in and control over the systems were completely suspended."

The action of the trial court in sustaining the motion of the defendant to dismiss the action should be in all things affirmed.

By the Court: It is so ordered.