## CITY OF TULSA v. GRIER.

No. 13029—Opinion Filed Dec. 16 1924.

Rehearing Denied Feb. 9, 1926.

**1. Limitation of Actions—Damages to Real Property—Temporary or Permanent Injury.**

The bar of the statute of limitations is set in motion to a cause of action for damages to, or trespass upon real property caused by the construction of an improvement when the injury occurs. Such an injury may be temporary or permanent. When temporary the injury occurs at the time of the first damage. When permanent, at the time it becomes obvious that the injury is a permanent one.

**2. Appeal and Error—Sufficiency of Evidence—Judgment.**

Where a suit at law is submitted to the court without the intervention of a jury, the judgment of the trial court will not be disturbed when there is any competent evidence reasonably supporting it.

Error from District Court Tulsa County; Valjean Biddison, Judge.

Action by Lorenzo Grier against the City of Tulsa. Judgment for plaintiff, and defendant brings error. Affirmed.

I. J. Underwood and H. L. S. Halley, for plaintiff in error.

Davidson & Williams and J. J. Henderson, for defendant in error.

WARREN, J. In this case the defendant in error, Lorenzo Grier, brought suit against the plaintiff in error, the city of Tulsa, because of alleged damage to his real property located in the city of Tulsa by reason of the construction by the city of a sanitary sewer, a storm sewer and an embankment for a street, closing the course of what is alleged to have been a well-defined stream.

The suit was originally filed May 11, 1917, and sued the city for damage because of negligence in constructing the sanitary sewer and in obstructing the flow of water through its natural course down a ravine, by constructing a storm sewer in the bed of the stream and filling it otherwise until the water in time of unusual freshets could not be carried off thereby.

To this petition a motion to make more definite and certain was filed by the defendant. This was sustained, and on July 5, 1917, an amended petition was filed expanding the allegations of the original pe-

tition, but still resting his claim for damage on the negligent construction of the sanitary and storm sewers and obstructing the course of the stream.

To this pleading an answer was filed, and in due time a reply. Later, on April 10. 1920, a second amended petition was filed, which is the petition on which the judgment of the trial court in this action is based.

This second amended petition pleads three separate causes of action. The first cause of action alleges damage because of the negligent construction of a sanitary sewer with manholes constructed too low, with movable tops, thereby causing, in time of heavy rains, the sanitary sewer to become flooded with surface water, forcing the sewage out of the sewer over the premises of the plaintiff. This sewer was constructed pursuant to an easement or right of way granted the city by Grier.

The second cause of action alleges the filling up of a ravine or water course by a storm sewer, 6 feet in diameter, causing the water formerly carried thereby, during heavy rains, to be forced over the premises of plaintiff, damaging the foundation of his houses and rendering them undesirable as rental property. This storm sewer also was constructed under a right of way or easement granted by Grier.

The third cause of action alleges the damming of the same stream, ravine, or water course as alleged in the second cause of action by the construction of a fill on 8th street, raising the grade thereof, thereby preventing the water of this ravine from flowing off in its usual course.

To this second amended petition the defendant filed its motion to require the plaintiff to elect whether he would sue for temporary damages or for permanent damages, on the theory that the alternative claim for temporary or permanent damages as claimed by the plaintiff was inconsistent, and for the further reason that defendant could not properly defend against an alternative action.

This motion was overruled by the court, to which action the defendant excepted, and this is assigned as error on this appeal.

An answer was filed by the defendant, admitting the construction of the sewers and the 8th street embankment, but denying that the sewers or embankment were negligently construed. Defendant further alleged that plaintiff's property was situated in low lands over which surface waters

naturally flowed and that plaintiff failed to protect and guard his lands and that the property had always been subject to similar floods. Defendant further pleaded that the improvements were made in the exercise of governmental and discretionary legislative powers properly done for the improvement of the municipality, and because of this defendant is not liable. As a further defense defendant pleaded the two-year statute of limitations. The reply was a general denial.

A jury was waived and the cause submitted to the court, which heard the evidence and rendered judgment for $7,500 in favor of plaintiff, later remitting $1,000 on the hearing of the motion for new trial. Appeal was perfected regularly and in due time.

Plaintiff in error argues six assignments of error in its brief, which are as follows:

"1. The trial court erred in overruling the demurrer to plaintiff's second amended petition, defendant's objection to the introduction of any evidence under plaintiff's second amended petition, and defendant's demurrer to the evidence of the plaintiff.

"2. The judgment of the trial court is contrary to the evidence.

"3. The judgment of the trial court is contrary to law.

"4. The judgment is excessive.

"5. The trial court erred in admitting incompetent evidence on the part of the plaintiff and refusing to admit competent evidence on the part of defendant.

"6. The trial court erred in overruling the motion of the defendant to require the plaintiff to elect upon which theory he was seeking to recover."

The argument under the first assignment of error is largely confined to the propositions of the alleged bar of the statute of limitations. Plaintiff in error relies on the provisions of section 185, Comp. Stat. 1921, the pertinent part of which is as follows:

"Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action shall have accrued, and not afterwards:

"Third: Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property, an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated, an action for relief on the

ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

He points out that the original petition was filed May 11, 1917, and the second amended petition, on which the cause was tried, was filed April 10, 1920. He further shows that the allegations of the petition show that the first flood was in June, 1913, the sanitary sewer was constructed in October, 1912, the storm sewer in 1912, and the grading of 8th street in March, 1913. He further relies on the fact that the 8th street grading and embankment are not specifically complained of in the original petition.

He next calls attention to the fact that on May 20, 1913, the plaintiff, Lorenzo Grier, filed a claim with the commissioners of the city of Tulsa for the sum of $5,000 because of negligence and carelessness of the city of Tulsa in building an embankment on the 8th street between Madison and Lansing, the point in question here. This claim was attached to an exhibit to the amended petition and was later introduced in evidence by the defendant. It specified damage to lots 19 and 20, block 9, Bumutt addition, lots 1, 7, 9, 10 and 11, Oaklawn addition, a part of the premises herein alleged to have been damaged. It also claimed damage because of the sanitary sewer and storm sewer.

It is apparent that there must be much force to this claim on the part of the plaintiff in error unless the matters on which it relies can be avoided in some way by other matters in the second amended petition showing a lack of effect in the claim set out.

The plaintiff in his second amended petition sets out the various dates of construction and the various overflows beginning in June, 1913, passing 1914, continuing at frequent intervals up to the filing of the petition. Apparently in order to meet the objection made as to the bar of the statute. the plaintiff alleged in the second and third causes of action that it did not become obvious until June, 1915, that the construction of the storm sewer and embankment would cause his land to be flooded continuously. stating that debris caused the water of the first flood to accumulate. He made no such allegation as to his first cause of action, apparently relying on the fact that the following provision was included in his grant of right of way:

"Said main sewer shall be laid and maintained by the said party of the second part

at its own cost and expense in such a manner as not to unnecessarily interfere with the use by the parties of the first part, their heirs and assigns of the premises where land."

Thus making it a contract in writing with a five-year limitation applicable thereto.

Is this contention, as to the fact that the injury did not become obvious, sufficient to constitute an exception that will remove this action from the bar of the statute?

The plaintiff in error relies on the cases of Parker v. City of Atchison (Kan.) 48 Pac. 631. and City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 186. These cases, in our opinion, do not meet the particular question now under discussion. In Parker v. City of Atchison, the only proposition as to limitation discussed was the straight limitation of two years without any allegations or proofs showing an exception taking the matter out of the bar of the statute. In City of Ardmore v. Orr, the question of limitation was not decided at all. The questions in controversy were liability for collecting surface waters and failing to provide an outlet therefor; whether such damages were temporary or permanent; and questions of practice.

This court in Pahlka v. C., R. I. & P. Ry. Co., 62 Okla. 223, 161 Pac. 544, which is relied on by both parties to this action, holds that where the actual injury is not the obvious or necessary result of the erection of the improvement, the cause of action arises at the time of the actual injury and not at the time of the erection of the structure. It holds, where the cause is permanent (not the injury) and the injury is the obvious or necessary result that the cause of action arises at the time of the erection of the improvement.

This case has been followed by this court in Lundy v. Atchinson, T. & S. F. Ry. Co., 94 Okla. 130, 220 Pac. 857, in which this court said:

"This grade or dumping having been built 'long prior to December 31, 1917,' and no resultant injury to plaintiff's land or crops having occurred until May, 1918, it seems clear that the injury then suffered was not the natural and obvious result of such construction. but that other and independent causes combined with such construction to produce the conditions resulting in the instant loss. It is not the character or permanence of the improvement of which plaintiff complains, but that 'defendant failed and neglected to provide sufficient outlet for the water that would accumulate by

reason of the railroad bed.' Obviously such defect, when found to exist, is remediable, and admittedly under the allegations of the petition such defect was not demonstrable until the concurrence of other causes therewith."

Under these holdings. whether the injury was the obvious and necessary result of the improvement, or whether it was not obvious or apparent until June, 1915, that the construction of the storm sewer and the embankment would cause the extraordinary flooding of the property was an issue of fact to be tried by the court sitting as a jury.

The judgment of the court in favor of the plaintiff is an adjudication of these matters in accordance with plaintiff's theory, and it only remains for us to inquire whether or not there is competent testimony reasonably supporting his finding.

Evidence was introduced on behalf of the plaintiff showing that the first flood was in June, 1913. He explains this as not being obvious for the reason that the four-foot inlet whereby the water was carried into the storm sewer was stopped up by lumber, boxes, a wagon bed and trash, and for the reason he was persuaded by the representatives of the city that the trouble would not again occur. There were no floods or excessive rains in 1914, but in 1915, in March, May, and June, on separate occasions, the property was flooded, the latter being the greatest of all. and defendant in error contends that at that time it became obvious that his property was permanently damaged by the nature of the construction of the improvements.

Plaintiff in error controverts this by claim for $5,000 filed by the defendant in error against the city of Tulsa in July, 1913. It calls attention to the fact that this claims damages to a part of this very property for these selfsame reasons. It also refers to letters in evidence written by the plaintiff prior to June, 1915, demanding that the city reimburse him for his damages.

The trouble with this contention is that it must be borne in mind that these specified documents are only evidence, for the consideration of the court along with the other evidence. Nowhere is it provided that they are conclusive. They might have been very persuasive on the writer of this opinion had he been sitting as a trial judge in this case. It seems they were not sufficient for the trial court. He preferred to accept the explanation of the plaintiff that he thought from investigation the flood was caused by the debris stopping up the intake of the storm sewer and that he was persuaded by the city's representative that the damage would not again occur.

Where a law case is tried to the court without the intervention of a jury, such jury having been waived. and there is competent evidence to support the judgment, this court will not reverse it on appeal. Hockaday v. Jones, 8 Okla. 156, 56 Pac. 1054; Saxon v. White. 21 Okla. 194, 95 Pac. 783; Deming Inv. Co. v. Love, 31 Okla. 146, 120 Pac. 635; Roberts v. Mosier, 35 Okla. 691, 132 Pac. 679; City of Chickasha v. Looney. 36 Okla. 155, 128 Pac. 136; Meagher v. Harjo, 72 Okla. 206, 179 Pac. 757; Shadwell v. Brown, 88 Okla. 44, 211 Pac. 410; Dustin Grocery & Feed Co. v. Lucas. 91 Okla. 11, 215 Pac. 417; Foreman v. Needles et al., 78 Okla. 105, 188 Pac. 1087; Conner v. Warmer, 52 Okla. 630, 152 Pac. 1116; Bohart v. Matthews, 29 Okla. 315, 116 Pac. 944; McCann v. McCann, 24 Okla. 264, 103 Pac. 694; Lockett v. U. S. Fidelity & Guaranty Co., 89 Okla. 143, 214 Pac. 686; Bank of Big Cabin v. Lyons, 91 Okla. 1, 215 Pac. 427.

Plaintiff in error also contends under this assignment that a city is not liable in fixing its first grade, and cites in support thereof Adams v. Oklahoma City, 20 Okla. 519, 95 Pac. 975, and Mangum v. Todd, 42 Okla. 345, 141 Pac. 266.

While it is true that the ordinary rule is that a city may not be liable if the improvement is properly constructed, that does not apply in this case. It is not a proper construction to build a high embankment and stop the natural flow of water through a well-defined course and provide no outlet therefor.

In City of Globe v. Shute, 196 Pac. 1024, 22 Ariz. 280, the court said:

"If the allegations of the complaint are true, the city diverted the water flowing in the McCormick wash and conveyed it by means of a drain in the neighborhood of the plaintiffs' premises. The drain was too small to carry the water, rubbish, etc, which came down the wash in the time of a freshet, and as a consequence the drain became clogged, and the water overflowed and flooded the premises of the plaintiffs and damaged their goods. Clearly the city was guilty of a positive act of wrongdoing, and cannot be heard to defend on the ground that in building the drain the city was in the performance of a public duty, exercising quasi judicial or discretionary power as to the capacity, size, and dimensions of the drain, and is therefore not liable. It is

true the city had the right to build the drain, but it had no right to commit what was practically a trespass upon the plaintiffs' premises. A municipality has no greater right than an individual to divert the waters of a natural stream by means of an insufficiently constructed drain or other artificial channel, and thereby damage the property of an abutting owner. This is clearly the law."

No case has been called to our attention where the city has stopped the course of water running through well-defined banks and not been held liable for damages. In surface waters only, a different rule may exist, but from the proof in this case the waters complained of here cannot be held to be surface waters alone.

Attention is called to the fact that the Eighth street embankment is not specifically mentioned until the filing of the second amended petition. While it is not specified in the preceding petitions, the matters resultant therefrom are set out and the petition relied on is merely more specific, definite, and certain than the preceding petitions, and declares on no new cause of action.

Plaintiff in error next contends that the judgment of the trial court is contrary to the evidence. It is its theory that there was no proof that the construction of these improvements caused any greater amount of water to be cast on the land than was thrown thereon by floods previous to the construction of those improvements. We think this not well taken. There is a superabundance of proof as to vast amounts of water flooding this property .While it is true that plaintiff in error introduced some proof as to previous floods, yet it must be remembered that the word "flood" is a relative term and may refer to mere surface water causing a temporary inconvenience, and may also refer to such quantities of water as caused the damage in the present case. We think it apparent to any open-minded person that the improvements in question did cause a vast difference in the extent of the inundation. It would be a strange thing if filling up a waterway having banks 8 feet high and a width at the bottom of 20 feet with a sewer 6 feet in diameter together with dirt, said sewer finally crossing the ditch at right angles, and finally by building an embankment for a street without an outlet would not cause the water formerly carried by this ditch to spread out and back up over the plaintiff's property.

The plaintiff in error next contends that 114-4

the judgment of the trial court is contrary to law. Here the question argued is that the court erred in holding that the damages, assuming that they were proved, were permanent. Council cites City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867, in support of his theory that the damages, if any, were temporary. In the Ardmore Case, prior to 1907, the surface waters on Caddo street were carried off through two stone sewers running under a railway track on the east side of the street. These sewers had always carried all the water satisfactorily. During that year the city paved Caddo street, closed one of the stone sewers and carried all the water to the other sewer, at the same time reducing its size. Other cross streets were paved and their waters thrown into Caddo street to be carried off through the same opening. Plaintiff was damaged by the failure of this one sewer to carry off the entire quantity and sued and recovered damages. The court's instruction authorized the plaintiff to recover all loss of rents, sustained, loss of rents in future, and all other damages plaintiff had sustained or might sustain in the future. The court thereby held the damage permanent. This court in reversing the case said :

"If said sewers are enlarged or additional sewers built to carry off these waters, then no further injury will result to plaintiff; and it cannot be presumed that the city, upon its having been determined that the collection of the waters at the point near plaintiff's property and the negligent construction of said sewers to carry it off is unlawful, will not remedy the same so as to prevent further injury. To permit plaintiff to recover for future loss, which will not occur if the defects in the construction of said sewer are corrected, would be unjust to the city."

In that case it will be seen that it was only necessary for the defendant to provide an additional outlet under the railroad, and the damage could not be held permanent.

The case of City of Mangum v. Sun Set Field, 73 Okla. 11, 174 Pac. 501, holds that whether or not an injury temporary or permanent is determined by whether or not it is abatable. It defines the nonabatable structure as "a structure which if erected by one that has the power of eminent domain, could be made legal by condemning the property that it injures or the right that it infringes."

This, of course, applies to the condition in this case. Further, in the present case

the damage is caused by the stopping up of a stream by a part of a permanent sewer system, by a permanent sanitary sewer and by a high embankment supporting a paved street. It can readily be seen that it would cost the city of Tulsa far more to remedy the evil in this case than it would to pay the damage. In fact, it could in all probability not be remedied at all with due regard for the public welfare.

Plaintiff in error next complains that the judgment is excessive. We have examined the testimony, and find reasonable testimony sufficient to sustain the judgment. In addition t hearing the witnesses, the trial judge, by agreement of the parties, viewed the premises alleged to have been damaged. He gave the amount of damages a second consideration when he ordered $1,000 remitted or a new trial given. Under all these circumstances, we do n t feel justified in disturbing the amount.

The plaintiff in error also complains of the admission of incompetent evidence and the exclusion of c mpetent evidence. This evidence is not set out as required by rule 26. Further, this court has repeatedly held that this court will not reverse a cause because of the admission or exclusion (f evidence, where the cause is tried to the the court, unless it affirmatively appears that such action of the court affected the result. Tobin v. O'Brister, 16 Okla. 500, 95 Pac. 1121; Gennert v. Griffin, 28 Okla. 733, 116 Pac. 439; Stone v. Spencer, 79 Okla. 85, 191 Pac. 197; Ins. Co. of North America v. Cochran, 59 Okla. 200, 159 Pac. 247; Browning v. Atkins, 10 Okla. 536, 62 Pac. 281; Hoodenpyl v. Champion, 101 Okla. 239, 225 Pac. 160.

Complaint is next made because the court erred in overruling the motion of the defendant that the plaintiff be required to elect upon which theory he would recover. It cited in support of this contention Irvine v. City of Oelwein, 170 I wa, 653, 150 N. W. 674. The question therein decided was not the identical question here, but it may in a sense be regarded as an authority in support of the contention of plaintiff. We think it w uld not have been error, had the court required the plaintiff to elect. We have, however, a voluminous record before us of more than 800 pages. We feel that this case was fully presented by both sides on both theories. Counsel for plaintiff in error have not pointed out that it is not apparent how the city of Tulsa was damaged by the overruling of this moti n. No injury being apparent, the cause will not

be reversed because of error in overruling the motion.

The judgment of the trial c urt will therefore be affirmed.

McNEILL, C. J., and JOHNSON, BRANSON, and GORDON, JJ., concur.

Note.—See under (1) 25 Cyc. pp. 1136, 1140; (2) 4 C. J. §2853.