## CITY OF OKMULGEE v. WEIMER.

No. 21283. Opinion Filed Feb. 2, 1932.

Rehearing Denied March 1, 1932.

L. L. Cowley, City Atty., for plaintiff in error.

Hepburn & Hepburn, for defendant in error.

KORNEGAY, J. This case comes from the superior court of Okmulgee county. The

first petition was filed on the 18th of July, 1929. The foundation of the petition was the presentation of a claim against the city of Okmulgee, verified by the plaintiff's affidavit, on the 10th of July, 1929. The charging part of the claim is:

"To damage to land, to wit, to lots one (1), two (2), and twenty-two (22), in block two (2), Orchard Place addition to the city of Okmulgee, Okla., by permitting and running water from Oklahoma avenue and from Seventeenth street, in the city of Okmulgee, onto said lots _____$3000.00

"Walter Weimer, Owner of said lots.

"Hepburn & Hepburn,
Attorneys for Claimant."

The petition averred the corporate existence of the city of Okmulgee, and the ownership of lots 1, 2, and 22 in block 2, Orchard Place addition, and the erection of five residence houses on the lots, two having basements. It avers the existence of Oklahoma avenue as a public street in the city of Okmulgee, running north and south, and for a long time its having been opened and maintained by the city for the use of the traveling public. It averred that about the first of June, 1929, and since 1916, and up to the present time, the defendant, in violation of its duties to the public and to the plaintiff, negligently and carelessly collected large amounts of surface water on said Oklahoma avenue, and permitted and caused such water to run east from Oklahoma avenue at its intersection with 17th street, and it permitted and caused the water to run in large quantities and volume on and across lots 1, 2, and 22 in block 2, and that the water had overflowed the lots, and overflowed the basements of plaintiff's houses, and had caused such damage as to make the lots worthless and without any value to the plaintiff, and had made it impossible for plaintiff to rent with any advantage to him the residence houses, so built and constructed on the lots, and all to the great damage of the plaintiff in the sum of $3,000.

It further averred that about 6 or 7 years before the defendant had placed on Dogwood avenue a cement culvert to drain the water running in and across the lots, and it further averred that the defendant carelessly and negligently constructed the culvert in such a manner that it was inadequate in times of heavy rains to drain the water from lots 1, 2, and 22 in block 2, and that the culvert was constructed in such a careless and negligent manner that it backed the water on the lots, overflowing and flooding the basements of the residence houses,

erected on plaintiff's premises, all to his great damage, stating no amount.

The sixth charge is that the damage was caused through the negligence and carelessness of the defendant in permitting the surface water to run on and across the lots. There was a further allegation of protest numerous times over a long period of years, and a request that an end be put to the damage suffered by the plaintiff, and the further allegation that at all times the requests and complaints had been ignored, neglected, and refused. Charge was made of having presented the claim for damages on the 10th of July, 1929. There was a prayer for an order restraining defendant from running or permitting water to run on or across lots 1, 2, and 22, in block 2, until further order of the court, and for all such other and further relief as might seem proper. This was verified.

A county judge issued a restraining order, restraining the defendant "from running or permitting water to run onto or across lots 1, 2, and 22 in block 2—until a further order of the court." The order set the matter for hearing on the issuing of a temporary injunction for the 20th of August, 1929, and was signed by the judge of the county court, owing to the absence of the regular judge. The order was modified by the regular judge so as to set the hearing for the 24th of August.

In the meantime, attack was made on the petition by a motion to add more to and to strike from the petition. The court did require that the plaintiff state the length of time, prior to the filing of the petition, that the defendant had collected the surface water on Oklahoma avenue, and overruled the other paragraphs (11 in number) asking for more definite statement. A request was made to strike from the petition the prayer for injunctive relief, but that appears not to have been acted on, except by continuing the restraining order until August 27th, and then dissolving it and refusing a temporary injunction. A motion to require a separate statement and to number the causes of action was made. Permission to amend by interlineation in the fourth paragraph was given, and the motion to require separate statement of the causes of action was sustained.

Amended petition was filed on the 3rd of October, 1929. This was based on the original claim against the city, set up in the first petition, and also on one verified on the 2nd of October, 1929, the charging part of the latter one being:

"To damage to land, to wit, to lots one

(1), two (2) and twenty-two (22) in block two (2), Orchard Place addition to the city of Okmulgee, Okla., by permitting and running water from Oklahoma avenue and from Seventeenth street, in the city of Okmulgee, onto said lots, and by negligently and carelessly building and constructing a culvert on and across Dogwood avenue, thereby damming up surface water and throwing the same back up onto said above described lots belonging to the said Walter Weimer—$3000.00

"Walter Weimer, Owner of said Lots.

"Hepburn & Hepburn,
Attorneys for Claimant."

This was verified on the 2nd of October, 1929.

The first cause of action was practically the same as set out in the original petition, in which the plaintiff stated that since 1916, the collection of the water had been made on Oklahoma avenue, and especially this had been done in 1927, 1928, and 1929. It further averred the protest and complaints to the city authorities in the fifth paragraph, but that was stricken on the 12th of October.

The second cause of action averred the ownership of the property, and the duty of the defendant to provide adequate sewers and an outlet for the water collected, so as to prevent the water from backing upon and overflowing the abutting premises. There was an allegation that since 1916, and especially during the years 1927, 1928, 1929, and up to the present time, the water had cut a slight channel across the plaintiff's property, and the damage had been slight, as the grade on Dogwood avenue was several feet lower than the surface of plaintiff's property on the east side of the property. There was an allegation that about six or seven years ago, the defendant had raised the grade about three feet, and thereby had dammed the water and thrown it back on the property of the plaintiff, and at that time the defendant had negligently and carelessly constructed a culvert which was inadequate at times of heavy rains to drain the water from the lots, and that the culvert was constructed in such a careless and negligent manner that it prevented the water from flowing off in its usual course, and backed the water onto the plaintiff's lots and overflowed the basements of the plaintiff's houses, especially during the years 1927, 1928. and 1929, up to the present time, and plaintiff had been damaged in the sum of $3,000. The fifth paragraph alleged that the damage was caused by negligence and carelessness in permitting the surface water to run on the lots, and by throwing back the water by means of the culvert onto the lots of the plaintiff. There was an allega-

tion of protest, but this was stricken, and the damage was laid at $3,000, and the claim was set out.

An answer was filed setting up the statute of limitations of two years, and alleging that there was a swale or depression beginning near the northwest corner of lot 22, and running in a southeasterly direction, then east across lots 1 and 2 to Dogwood avenue, over which surface water runs according to the laws of nature, and the natural conformation necessarily collecting a large body of water after a heavy rain, and that the defendant was not liable for this. A denial was made of having collected the surface water. A further statement of the knowledge by the plaintiff of the existence of the depression when he erected his houses, and that the surface water of Oklahoma avenue and the surrounding country flowed through. There was a further allegation of no grade established when the property was improved, and denying negligence in the construction of the culvert, and an allegation of sufficiency of the culvert and that, if the basements in the two residences were overflowed, it was due to causes other than that of the culvert on Dogwood avenue, over which the defendant had no control. There was a further allegation that was stricken that in the bringing to grade of Dogwood avenue and in the construction of culverts defendant was acting as the agent of the state of Oklahoma and was not liable for damages. There was a further allegation of the two-year statute of limitations as a bar.

The case was tried, resulting in a verdict, which is as follows:

"We, the jury impaneled and sworn in the above-entitled cause, do upon our oaths, find for the plaintiff (on his first cause of action) (on his second cause of action) and fix the amount of his recovery at $450."

Elaborate instructions were given, and a good deal of testimony was introduced, all of which has been carefully examined. Under the decisions of this court, most clearly, the cause of action arising from turning extra surface water into the natural depression, leading through Oklahoma avenue, was barred by the two-year statute of limitation. The wrongful act complained of, according to the allegations in the petition, on which the first cause of action was based, occurred in 1916, but under the evidence it went back to 1909. It is clear, from the petition, that for at least 12 years it had been known that tht wrongful diversion of the water had been made, and no steps taken to repair the wrong arising from the extra water pouring over the lots, brought

there as a result of rainfall, a natural thing. The statute governing the time in which actions for "trespass on real estate" prescribes two years, it being the third subdivision of section 185, C. O. S. 1921, which reads as follows:

"185. Limitation of Other Actions. Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * *

"Third. Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

See Parker v. City of Atchison (Kan.) 48 Pac. 631. See, also, City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867.

From the allegations of the plaintiff in pleadings and proof, it is clear that the city authorities never recognized any obligation on its part to change the flow of the water after its original diversion. See, also, City of Tulsa v. Greer, 114 Okla. 95, 243 P. 753, wherein the court says:

"This court in Pahlka v. C. R. I. & P. Ry. Co., 62 Okla. 223, 161 P. 544, which is relied on by both parties to this action, holds that where the actual injury is not the obvious or necessary result of the erection of the improvement, the cause of action arises at the time of the actual injury and not at the time of the erection of the structure. It holds, where the cause is permanent (not the injury) and the injury is the obvious or necessary result, that the cause of action arises at the time of the erection of the improvement."

From the day of the diversion, its consequences were obvious. In the original petition it is evident that damages asked for were for what has been denominated "permanent" injury, and the fact that in the amended petition the damages asked for are described as "temporary damages" would not help matters.

An examination of the evidence in this case does not show anything calculated to exempt plaintiff from the operation of the statute. It does show, however, a desire of plaintiff to get all he could out of his property by bringing it into the city and platting, though not well located, naturally. Some suggestion was made in the evidence as to the city not working the streets so as to allow access to his property, though plaintiff only dedicated 15 feet for a street on the side of the main access. The examination of the witness on behalf of the city and also on behalf of plaintiff developed the wisdom of the statutory enactments.

As to the second cause of action, starting by prosecution of the claim in October, 1929, for back water in time of excessive rains, the original cause was the effort of the city, some six years before, to provide an improved highway on the east of the lots. The trouble, as complained of, was faulty construction of the culvert, not being sufficient to take off the water when excessive rain came, aggravated by trash and old cans and tubs clogging. That was obvious at the start, and none had better opportunity to know the conditions than the plaintiff. He put three houses on a lot 75 by 129 feet on lot 1, while the draw ran, according to the plat, about 25 feet south of the lot line on which he placed his houses. He drained the basement by a connection into the draw or ditch. Whether he provided a gate valve to prevent the back water is not shown, but his testimony is that he put the connection in to drain out water that might get in the basement from some other source.

Evidently, from the evidence, except when obstructed by refuse, the culvert took the water away. Plaintiff waits six years to complain after the culvert was put in. In the meantime, Okmulgee and its outward environments had reached the reaction from over stimulus and rents and rental opportunities had diminished. After the original suit was started, it occurred to plaintiff that he had three cases of flooding within two years that he could rely on, as being results unforeseen, based on six-year old negligence, arising from an effort of the city to make better the highway along the east side of his property. Proof was made of the property value in an early day as compared to the present value. Proof was made as to slump in rents, also as to the water being backed into the basement, whether through the outlet drain or "over the top" or saturated soil seepage is uncertain. Proof was also made of some filling in around the houses, and cleaning out the ditch that was clogged by trash and debris, and also of cleaning out the basement, but the evidence as to cost was more than vague.

The jury returned a general verdict for $450 and failed to state on which of the causes of action they found in favor of the plaintiff. There was considerable confusion injected into the case as to the statute of limitation, whether three years or two. An inquiring juror takes part. The colloquy

between the court and attorney and the juror is as follows:

"The Court: I might as well state that damages will be only three years before filing the petition. Mr. Hepburn: Mr. Cowley says three, I say two. Better take Mr. Cowley's three years immediately preceding 'July 18. The Court: Yes, anything in the evidence that occurs prior to July 18, 1926, gentlemen of the jury, is simply to guide you in estimating the damages that occurred between July 18, 1926, and July 18, 1929. Mr. Hepburn: I would like to have the record show that is by agreement between all the parties. Mr. Cowley: I don't agree, I have agreed to the statute of limitations. State the agreement he wants me to make. The Court: The defendant is relying on the three-year statute of limitations? Mr. Cowley: Sure. Mr. Hepburn: I was satisfied we could only recover for two years until I read Mr. Cowley's answer, but, of course, he is perfectly right in three years. The Court: Damages to real estate are limited to three years. A Juror: Can I ask a question: The amount of damages you ask for is the same whether three years or two years? Mr. Hepburn: Oh, yes."

We think the two-year statute of limitation was applicable to plaintiff's suit for the flooding, if any cause of action he had against the city. The instructions to the jury were confusing, and the verdict does not appear to have been warranted by the facts, as on the admitted facts redress for the things complained of appears to be barred by the statute of limitations of two years, and as it appears that no additional evidence on another trial could likely be produced to displace the bar, final judgment should here be ordered.

The case is reversed, with directions to set aside the judgment and dismiss the action at the cost of defendant in error.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CULLISON, J., absent.