### OKLAHOMA CITY v. BETHEL et al.

No. 23575.   June 11, 1935.

Rehearing Denied Sept. 10, 1935.

Application for Leave to File Second Petition for Rehearing Denied Dec. 3, 1935.

W. H. Brown, Municipal Counselor, and Harlan T. Deupree and A. P. Van Meter, Asst. Municipal Counselors, for plaintiff in error.

Shirk, Danner & Earnheart, for defendants in error.

RILEY, J.   This is an appeal from a judgment in favor of defendants in error, herein referred to as plaintiffs, in an action to recover for and on account of damage caused by an overflow of plaintiffs' premises from a storm sewer constructed by defendant city.

In the latter part of 1929, the city constructed a storm sewer of large dimensions designed to drain a considerable area in the northeast part of the city.

The storm sewer was made to open into an open ditch at Tenth street and Eastern avenue. Said ditch runs along the south side of the road east towards the North Canadian river, and to a short distance west of the Missouri, Kansas & Texas Railway roadbed on the west side of the river. There it runs diagonally across the road under a culvert, and thence east through a culvert under the railroad track and on to the river.

Plaintiffs owned and operated an amusement park for colored people, known as "Forest Park" and located on a small tract of land on the north side of the highway and west side of the railroad north of the northeast part of the Fair Grounds. Plaintiffs had constructed thereon several buildings, the principal one being a dance pavilion, and in connection therewith had and operated a number of amusement devices such as a merry-go-round, shooting gallery, and a miniature train, and others as are usually found at amusement parks.

Plaintiffs alleged, in substance, that the city wrongfully, unlawfully, and negligently constructed said storm sewer so as to collect the surface water from a large area in great volume, and abruptly terminated said sewer so as to empty the water into an inadequate open ditch in such a way that the surface water collected from usual hard rains would completely overflow plaintiffs' premises. That a proper construction would have been to continue the under-

ground sewer on east about one-half mile to the river; that the city failed to construct embankments or levees along the banks of said open ditch so as to prevent an overflow therefrom; that on several occasions after the construction of said sewer, the premises had been flooded from said ditch, whereas before the construction of the sewer said premises did not overflow; that on or about June 14, 1930, a rain of about 3.95 inches, such as may be frequently expected, fell in said drainage area, causing an overflow and flooding of plaintiffs' premises to a depth of from 32 to 60 inches, and 11 inches above the floor of the main building, which also filled and flooded the basement under said building, damaged and destroyed the equipment and property stored therein, greatly injuring and damaging the buildings, material, machinery and equipment; that the flood carried away doors, lumber, and other property, washed gulleys in the land and deposited thereon a large amount of sand and other debris, all to their damage in the sum of $4,930.36.

As a second cause of action, they further alleged that during the summer season of 1929, from April to October, they had operated said amusement park at a net profit of $4,041.36; that by reason of the said flood the dance floor was warped and made rough and uneven, and because of the destruction of other amusements, and the general dilapidated appearance of the premises caused by said flood, plaintiffs, although they tried to operate said park, were unable to do so at a profit, and they were therefore damaged by way of loss of profits in the sum of $4,041.36. By a third cause of action they alleged an apparent intention to continue the alleged nuisance, and prayed for injunctional relief, and for total damages on their first and second causes of action in the sum of $8,971.72.

Defendant answered by general denial, and further alleged in substance that all the premises involved had for a long time been known to be subject to overflow, and that the buildings and other property located thereon were placed upon land long known to be subject to overflow, and that plaintiffs failed and neglected to exercise reasonable care to protect their property from overflow; that there was no negligence on the part of the city in the construction, location, maintenance, and operation of its storm sewers; that the damage, if any, to plaintiffs' property was caused by insufficient openings under the Missouri, K. & T.

Railroad which caused the water to back up and over plaintiffs' premises.

Reply was by general denial.

One Bert Shepherd owned and operated an agricultural lease on lands adjoining the amusement park, which was also flooded by the same alleged cause. He filed an action against the city for damages. The two cases were tried together to a jury, resulting in verdicts in favor of the plaintiffs Bethel et al. in the sum of $3,154.76, and for plaintiff Shepherd in the sum of $243.75. Separate appeals are prosecuted by the city.

There are some 22 assignments of alleged error, most of which are without substantial merit.

The assignments of error are combined and submitted under five separate propositions. The first is that the court erred in rendering judgment on the verdict returned, as it is not sustained by the evidence.

Defendant does not seriously contend that under the pleadings and evidence plaintiffs were not entitled to recover anything. Defendant says in its brief that in all fairness, taking plaintiffs' evidence at its strongest, no damages were proven in excess of $500. With this we cannot agree. Taking plaintiffs' evidence at its strongest, the damage proved would exceed the amount of the verdict. True, the evidence on some of the items was somewhat vague and incomplete. Witnesses were permitted to state their estimate of the cost of repairs of certain equipment used in the business without stating that such would be the reasonable and customary charge for such work or repairs. Much of the evidence along these lines was admitted without complying strictly with the technical rules governing its admissibility.

Nevertheless there was substantial evidence tending to show that the reasonable cost of repair of the buildings, including the dance floor, would have been from $1,300 to $1,500. Some personal property was completely destroyed and some was washed away. Other equipment was damaged, but was subject to repair. On the whole, there was substantial evidence of damage in a sum not far from the amount of the verdict.

The next proposition is that the court erred in its instructions regarding damages, and in permitting double damages.

The first paragraph of instruction No. 12, given by the court, was:

"You are further instructed that if you

find for the plaintiff Forest Park Amusement Company, the measure of their damages would be the difference in value, if any, between the reasonable market value of their property before and after the alleged flood together with the reasonable and necessary loss of its use."

The second paragraph reads:

"The evidence has shown that a large part of property said to have been injured is capable of being repaired and in determining the damage to such property, you may take into consideration what would be the reasonable expense necessary to repair the property to put it in as good a condition as it was in prior to its being flooded. As to such property as may have been destroyed, the plaintiffs' loss as to that would be its reasonable market value at the time and place of its destruction. The plaintiffs would also be entitled to be compensated, if you find for plaintiffs, for the loss they may have suffered, if any, by the loss of the use of such property as capable of being repaired during such time as would be reasonably necessary for such repair and in determining this, you may take into consideration any loss which you may find that plaintiffs suffered in profits from their business."

It must be borne in mind that plaintiffs alleged in their petition that they were in legal possession of, and had equitable title to, the tract of land embraced within or composing Forest Park, describing it by metes and bounds.

If the first part of the above instruction was intended to apply to plaintiffs' property as a whole, it is clearly erroneous. While there was some evidence tending to show the value of the premises as a whole before the overflow, that is, what plaintiffs gave for the property about one year before, there was no evidence as to its reasonable market value after the overflow. But this does not appear to have been the theory of plaintiffs. Page after page of testimony was taken tending to show the reasonable cost of placing the buildings and grounds in a state of repair. There was no evidence or contention that the damage was of a permanent character, such as would justify a recovery for damages based upon the difference between the market value of the premises as a whole just prior to and just after the overflow, which, as applied to real estate, is generally defined as permanent damage. In fact, the whole theory of plaintiffs was that the condition produced by the construction of the storm sewer could have been remedied by the expenditure of money,

by the extension of the storm sewer under ground to the river.

There was no place for an instruction on permanent damage to the premises as a whole.

In no event, however, is a plaintiff entitled in an action of this kind to recover the full amount of the difference in value of property prior to and after the injury, and at the same time recover for the loss of the use of the same property.

In City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867, it is held that for injuries to realty which result from causes susceptible of remedy or abatement, the owner is entitled to recover therefor only such damages as had accrued on account of the impaired or lost use of his property up to the time of commencement of the action. But from injuries resulting from a permanent cause, the owner may recover in a single action his entire damage, to wit, that amount which represents the permanent depreciation of the realty in value caused by the injury. Under the instruction given, there were two separate measures of damages possible for the jury to consider: The difference between the value of plaintiffs' property before and after the flood, and (2) the reasonable cost of repair of plaintiffs' property, such as was capable of repair, together with the value of the use of the same for such time as was reasonably necessary for the repair thereof, plus the reasonable market value of the personal property totally destroyed. However, there was one item of personal property, viz., the miniature train, which was not totally destroyed and was not capable of being repaired. The salvage value thereof, or the amount for which it sold, was $200. The proper measure of damage as to that item, under the rule announced in Missouri-Pacific Ry. Co. v. Qualls. 120 Okla. 49, 250 P. 774, was the difference in its value at the place immediately before and immediately after the injury.

It is not possible to determine which of the rules as to the measure of damages was followed by the jury. There was no instruction given as to the measure of damage on the injury to the miniature train.

The proper measure of damage under the pleadings and evidence was the reasonable and necessary expense of placing the premises in as good state of repair as they were just prior to their being flooded, together with loss of the use of the premises during

such time as the evidence showed was reasonably necessary for such repair, or, in other words, the loss of such profits as the evidence showed with reasonable certainty plaintiffs would have made during such time.

Plaintiffs were permitted to show profits for the previous year for the months from April, 1929, to May, 1930, inclusive, in order to establish their claim for loss of the use of the premises involved or their direct claim for loss of profits. This was clearly wrong as to the months of April and May and the first 14 days of June. They were in no way deprived of the use of the premises during that period of 1930.

The proof of loss of profits should have been confined to the time reasonably necessary to make the repairs. The burden was upon them to show the time reasonably necessary for such purpose. They failed to do so.

Evidence was produced by defendant tending to show that the repairs could have been made in two or three weeks. This evidence was not contradicted. The instructions on loss of profits should have been confined to that period.

In addition thereto plaintiffs could recover the reasonable value at the time and place of the personal property totally destroyed or washed away.

In computing the necessary cost of repairs credit should be allowed the city for the salvage value of the miniature train. It is not proper to allow the difference in value of the train just prior to and just after the flood, and also loss of use of same if the full value is to be paid, less salvage value, its proportionate earnings should be deducted from the item of loss of profits.

It is next contended that the court erred in refusing to give an instruction requested by the defendant to the effect that plaintiffs owed a duty to exercise reasonable care to minimize their damage.

This is, of course, the duty of any person whose property is about to be or has been injured by the wrongful act of another.

It is doubtful whether, under the record in this case, there is any substantial evidence tending to show neglect on the part of plaintiffs in this particular. There is but little if any merit in the contention.

The next proposition is that in an action for damages for overflowing land, where the pleadings and evidence raise an issue of negligence of defendant, it is error to fail to instruct on this theory, and to instruct instead on the theory of taking under eminent domain provisions of the law.

Under this proposition defendant asserts that the court erred in giving instruction No. 7, as follows:

"You are further instructed that it is provided by the Constitution of the state of Oklahoma that private property may not be taken or damaged for public use without just compensation and that the plaintiffs are seeking to recover in this action for damages they allege they have suffered by reason of the public improvement constructed by the defendant city of Oklahoma City for the purpose of carrying off surface water."

It is contended that this constitutes an instruction under the eminent domain law, and a departure from the theory of plaintiffs in this, that the alleged causes of action were based upon negligence by the petition.

The contention then is that because the court gave the above instruction and failed to instruct on the question of negligence, the court wholly departed from the issues as made by the pleadings and the evidence. But defendant overlooks the fact that plaintiffs alleged in their petition that the acts of defendant in connection with the storm sewer were "wrongful" or "unlawful," as well as negligent.

In connection with the above instruction, the court, in instruction No. 8, told the jury that the city could not be held liable for the incidental injuries to property by reason of the construction and maintenance of public improvements, such as a storm sewer, and then very properly told the jury that:

"* * * But in the exercise of its corporate powers, a municipal corporation has no power or authority to collect water by artificial means and to discharge it or permit it to discharge or overflow upon the premises of an adjacent owner in greater volumes or velocity than it would naturally flow there prior to the construction of such sewer."

That was the true basis of plaintiffs' cause of action.

The instructions as a whole did not place the action as one under the eminent domain provisions of the law, nor upon the basis of negligence, but as one for a tort arising from wrongful and unauthorized conduct rather than negligence.

A general and almost universal rule is stated in 43 C. J. 1145:

"* * * A municipality cannot, without rendering itself liable for the resulting damage, exercise its right to construct drains or sewers and grade or otherwise improve streets so as to collect surface water in artificial channels and discharge it in increased quantities, or in new and destructive currents, upon private property."

Such acts may well be said to be wrongful and unlawful without regard to the question of negligence.

While reference to the constitutional provision relative to taking or damaging private property for public use was not perhaps necessary, the instructions as a whole were not prejudicial except on the measure of damages as above pointed out.

For this error the judgment is reversed and the cause is remanded for a new trial.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., disqualified, not participating.